**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------x

TIMOTHY ABBEY and
WOLVERINE XPRESS LLC,
Individually and on behalf of all others
similarly situated including consumers,
business owners, motorists, owners of vehicles,
insurance companies, automobile finance
companies, automobile leasing companies,

                        Plaintiffs,

       - against -

RUNWAY TOWING CORP.
CYNTHIA PRITSINEVELOS
CHRIS PRITSINEVELOS,
JOHN DOE # 1 and JOHN DOE # 2

                    Defendants.
----------------------------------------------------------x

Docket No: _19cv-7116_____

**COMPLAINT**

Plaintiffs TIMOTHY ABBEY and WOLVERINE XPRESS LLC, individually and on behalf of all others similarly situated, by the undersigned attorneys, alleges as follows for this Class Action Complaint against Defendants. These allegations are made on information and belief, and pursuant to the investigation by Plaintiffs' counsel.

## <u>NATURE OF THE CASE</u>

1.      Plaintiff demands a jury trial.

2.      This is an action seeking twelve (12) claims for relief as follows:

**A.**     First Claim for Relief for Breach of Contract;

**B.**     Second Claim for Relief for violations of the Clayton Act, 15 U.S.C. §15;

**C.**     Third Claim for Relief for violations of New York General Business Law §349, et.seq.;

1

**D.**     Fourth Claim for Relief for violation of Civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et. seq. (18 U.S.C. 1961(c));

**E.**     Fifth Claim for Relief for violation of Civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et. seq. (18 U.S.C. 1961(a));

**F.**     Sixth Claim for Relief for violation of Civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et. seq. (18 U.S.C. 1961(b));

**G.**     Seventh Claim for Relief for violation of Civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et. seq. (18 U.S.C. 1961(d));

**H.**     Eighth Claim for Relief by Plaintiff Timothy Abbey against Defendant Runway for Personal Injuries;

**I.**     Ninth Claim for Relief by Plaintiff Timothy Abbey against Defendant John Doe # 2. for Personal Injuries;

**J.**     Tenth Claim for Relief by Plaintiff Wolverine Xpress LLC against Defendant Runway for Damage to Property;

**K.**     Eleventh Claim for Relief by Plaintiff Wolverine Xpress LLC and Plaintiff Timothy Abbey for Negligent Supervision against Defendant Runway Towing Corp.; and the

**L.**     Twelfth Claim for Relief for Punitive Damages.

## JURISDICTION AND VENUE

1.      Plaintiff Timothy Abbey ("Plaintiff Abbey") is an individual residing in,  domiciled and a citizen of the State of Alabama.

2.      Plaintiff Wolverine Xpress LLC ("Plaintiff Wolverine") is a limited liability company, organized and existing under the laws of the State of Alabama, with its principal place of business locate at 2598 Cahava Road, Uniontown, Alabama.

3.      Upon information and belief, Defendant Runway Towing Corp. ("Defendant Runway") is a New York Corporation, with a principal place of business at 124-20 South Conduit Avenue, Jamaica, County of Queens, City and State of New York.

4.      Upon   information   and   belief,   Defendant   CYNTHIA PRITSINEVELOS ("Defendant Cynthia") owns, operates and/or controls the day-to-day operations and management of Runway.

5.      Upon information and belief, Defendant Cynthia resides at 355 Lattingtown Road, Locust Valley, County of Nassau, State of New York.

6.      Upon information and belief, Defendant CHRIS PRITSINEVELOS ("Defendant Chris") owns, operates and/or controls the day-to-day operations and management of Runway.

7.      Upon information and belief, Defendant Chris resides at 355 Lattingtown Road, Locust Valley, County of Nassau, State of New York.

8.      Upon information and belief, Defendant JOHN DOE # 1  was and is a manager of Defendant Runway and/or controls the day-to-day operations and management of Defendant Runway.

9.      Upon information and belief, Defendant JOHN DOE # 2  was and is an employee of Defendant Runway who was the driver of a tow truck, towing the Tractor and Trailer in which Plaintiff Abbey was in such Tractor when Plaintiff Abbey suffered personal injuries.

10.     The United States District Court for the Eastern District of New York has jurisdiction over the parties, pursuant to (i) Title 28 of the United States Code §1332(a)(2) as the Plaintiff and Defendants are citizens of different states, (ii) pursuant to Title 28 of the United States Code §1331 which states that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, as this is an action alleging a monopoly by Defendant Runway under the Clayton Act (15 U.S.C. §15) and violations of 18 U.S.C. §1961, et.seq. – Civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), (iii) Title 28 of the United States Code §1337(a) which states that the district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies, and (iv) supplemental jurisdiction pursuant to Title 28 of the United States Code §1167.

11.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

12.     The United States District Court for the Eastern District of New York has venue pursuant to Title 29 of the United States Code §1391(b)(1), as Defendants conduct business within and reside within the Eastern District of New York, and the events which are the subject of this action occurred within the Eastern District of New York.

## CLASS ALLEGATIONS

13.     This action is brought on behalf of Plaintiffs individually and as a class action on behalf of the following class ("Class"):

(a)     All motorists, including owners and lessees of passenger cars, trucks and motorcycles, and insurance companies and automobile clubs who have been charged and paid an amount greater than the amount permitted to be charged by Defendant Runway under all applicable laws, rules, regulations, including the New York City Administrative Code §20-509.1, for the towing of vehicles from the New York City Arterial Highways: (1) the Brooklyn Queens Expressway, from the Queens side of the Kosciusko Bridge to Clinton Street, in Brooklyn; (2) the Cross Island Parkway (Entire Cross Island Parkway) in Queens; (3) the Gowanus Expressway and Prospect Expressway in Brooklyn; (4) the Belt Parkway from 65th Street to Rockaway Parkway in Brooklyn; (5) the Belt Parkway from Rockaway Parkway in Brooklyn to the Laurelton Parkway and Conduit overpass and Queens Nassau Expresseway in Queens; (6) the  entire Staten Island Expressway and West Shore Expressway in Staten Island; and (7) Richmond Parkway and Dr. Martin Luther King Jr. Expressway in Staten Island ("Highways"), from April 1, 2017 to the present date; including but not limited to motorists who have been overcharged and/or charged unlawful fees by Defendant Runway, including but not limited to "pull-out fees", "administrative fees", "storage fees" and toll charges.

14.     While the exact number of Class members can only be determined through appropriate discovery, Plaintiffs believe that there are thousands of members of the Class.

15.     Plaintiffs' claims are typical of the claims of the other members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct, as complained of herein.

16.     There are common questions of law and fact affecting members of the Class, which common questions predominate over questions that might affect individual members. These questions include, but are not limited to the following:

A.     Whether Defendants charged consumers and businesses a greater amount than the rates permitted for towing from the Seven Runway Towing Highways under New York City's Arterial Towing Program in accordance with New York City Administrative Code §20-509.1;

B.     Whether Defendants charged consumers and businesses for unlawful pull-out fees, administrative fees, storage charges due to Defendants' refusal to allow consumers and businesses to retrieve vehicles, resulting in excess storage;

C.     Whether Defendants were forced to use automobile repair shops affiliated with Defendants;

D.     Whether Defendants violated applicable laws, rules, statutes and regulations;

E.     Whether Plaintiffs and other members of the Class are entitled to damages, including punitive damages, costs and/or attorneys' fees for Defendants' acts and conduct as alleged herein, and the proper measure thereof.

17.     Plaintiffs will fairly and adequately represent the other members of the Class. Plaintiffs have no interests that conflict with the interests of other Class members. Plaintiffs have retained counsel competent and experienced in this type of action.

18.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members might be relatively be small, the expense and burden of individual litigation makes it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

19.     Upon information and belief, there are thousands of potential Class Members that were overcharged by between $100 and several thousands of dollars, but the majority of the claims by the Class Members would be claims for an ordinary Arterial Tow for a passenger vehicle, which would be a permitted charge of $125 for the tow with up to 10 miles free. In this case, the consumers were charged in many cases, between $175 and $400 for the tow that should have been $125.  There appear to be thousands of affected consumers and businesses that were overcharged by Defendant Runway for towing services. For the average potential class member in a class action, they can obtain restitution, refund and relief in the class action without having to commence their own actions individually which would be cost prohibited for most of the consumers and businesses who were overcharged by Defendant Runway.

20.     Members of the Class can be clearly identified from:

A. Towing records maintained by Defendant Runway who is required, pursuant to 6 RCNY §2-363(e) to record all calls for towing and record all occasions where towing service was rendered for the period April 1, 2017 to the present date. These records will provide the names, addresses of the consumer or business, and the amounts charged by Defendant Runway to such persons who can then be a member of the Class;

B. All authorizations to tow and all towing invoices pursuant to 6 RCNY §2-363(e), which required Defendant Runway to maintain in chronological order all authorizations to tow and all towing invoices, for a period of three years (which includes the period form April 1, 2017 to date), all of which can be used to identify each and every overcharge for every tow conducted by Defendant Runway from April 1, 2017 to date;

C. All records that Defendant Runway was and is required to maintain pursuant to 6 RCNY §2-378(b)(1) and (2) in an electronic format concerning every tow performed under the authority of the New York City Arterial Tow Program for the period April 1, 2017 to the present date;

D. Records, ledgers, receipts and bills that Defendant Runway was and is required to maintain pursuant to New York Administrative Code §20-516;

E. All members of the Class can be identified by records maintained by Defendant Runway and can be notified of the pendency of this action by United States mail using a form of notice customarily used in similar class actions.

21.     If a person or entity was charged for more than $125.00 to have his, her or their passenger car towed by Defendant Runway from the Highways from April 1, 2017 to the present date, and such person or entity was charged more than $125.00 for the tow and the first ten miles of mileage, then such person or entity would be a proper class member.

22.     Other proper members of the Class would be businesses who paid more than the amount permitted for the towing of trucks pursuant to the New York City Administrative Code and persons or entities charged "pull-out fees", "administative fees", excessive storage fees, those who were required to pay cash to Defendant Runway in lieu of using credit cards as Defendant Runway was required to accept credit cards pursuant to Sections 20-520.1 and 20-527 of the New York City Administrative Code.

23.     The Class members are similarly situated to Plaintiffs who have been overcharged for towing services by Defendant Runway.

24.     It is anticipated that there are thousands of overcharges by Defendant Runway; Some examples of overcharges for towing services by Defendant Runway are as follows, which as members of the Class, the motorists who paid for example $275.00 for towing services that should have been $125.00, would best be served by being a member of the Class:

A.     On or about December 27, 2018, Defendant Runway charged Daniel Argentina the sum of $375.00 for an arterial tow which charge should have been $125.00 plus 2 days storage @ $25.00 per day for a total of $175.00, the maximum amount allowed under the rates for the Arterial Tow Program – an overcharge of three times the permitted rate  (this charge was 114% greater than permitted by law);

B.     When Daniel Argentina attemped to retrieve his vehicle from Defendant Runway, Defendant Runway refused to return his vehicle holding the vehicle for two (2) additional days at additional storage charges;

C.     Upon information and belief, in or about July 2019, a tow truck owned and operated by Dente Towing from Newark, New Jersey was towing a box truck and became disabled on the BQE. Because Defendant Runway has and had the exclusive authority to tow on the BQE, a Defendant Runway truck arrived at the location of the disabled Dente tow truck. The driver from the Dente Truck asked the Defendant Runway driver to tow the Dente Tow Truck with the small box truck attached off of the exit. The Defendant Runway driver told the Dente driver that he had to tow everything back to Defendant Runway's office storage facility and could not take him only off to the exit. The Dente driver asked why and the Defendant Runway driver said he had to do that. The Defendant Runway driver told the Dente driver that the fee would be $5,600. Then the owner of Dente called Defendant Runway and spoke to the "owner" of Defendant Runway, upon information and belief to be Defendant Chris Pritsinevelos so said he could reduce the fee to $3,600 or if Dente paid cash it would be reduced to $3,200 to tow the Dente tow truck with the box truck attached off of the exit of the BQE. Thereafter, the owner of Dente called by telephone the NYPD highway district office and spoke to an officer and explained that Defendant Runway wanted to charge $3,600 to tow his tow truck off of the exit. The officer he would call back. Thereafter, the owner of Defendant Runway spoke by telephone with the owner of Dente and reduced the demand to $1,800 and the owner of Dente said why is it "$1,800 to tow me off the exit" and the owner of Defendant Runway said "I have a lot of cops to feed".  The owner of Dente then called the NYPD again and said that the owner of Defendant Runway said "I have a lot of cops to feed" and thereafter an highway officer from NYPD Highway Division 5 arrived at the scene and then Defendant Runway reduced the bill to approximately $685. The officer from Highway 5 said to the Defendant Runway driver "why are you robbing these people?" Then the Highway 5 officer asked the Defendant Runway driver to show him the tow bill for the tow, and the officer looked at the tow bill and said that the tow bill was not the correct authorization to tow form used on an Arterial Highway. The officer then directed the

Runway driver to drive the tow truck of of the exit and unhook the Dente truck for approximately $685. The officer told the Defendant Runway driver that if he did not do that and unhook the Dente tow truck after getting off the exit, the officer would arrest the Defenadant Runway driver.

D.      Upon information and belief, on or about November 13, 2019, Defendant Runway charged a consumer the sum of $350.00 instead of $225.00 (the permitted rate for this Arterial Tow) for the towing of a 1988 Ford Box Truck from the BQE and Koskiusko Bridge, an Arterial Highway for an approximately 4.5 mile tow, and Defendant Runway failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, failed to complete the breakdown of tow charges, milage charges and storage charges, and overcharged the consumer;

E.      Upon information and belief, on or about November 13, 2019, Defendant Runway charged a consumer the sum of $275.00 instead of $185.00 (the permitted rate for this Arterial Tow) for the towing of a 2014 Mercedes Benz Sprinter from the BQE, an Arterial Highway, to the nearest exit which was a tow of less than 1 mile, and Defendant Runway failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, failed to complete the breakdown of tow charges, milage charges, and overcharged the consumer  (this charge was 49% greater than permitted by law);

F.      Upon information and belief, on or about October 17, 2019, Defendant Runway charged a consumer the sum of $390.00 instead of approximately $169.00 (the permitted rate for this Arterial Tow) for the towing of an Audi car from the Cross Island Parkway, an Arterial Highway to a location in the Bronx approximately 15 mile tow, and failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, failed to complete the breakdown of tow charges, milage charges and storage charges, and overcharged the consumer  (this charge was 131% greater than permitted by law);

G.      Upon information and belief, on or about August 28, 2019, Defendant Runway charged "Western Express Inc." the sum of $550.00 plus tax to tow a 2019 Inernational Tractor Trailer from the Belt Parkway and Exit 1 to the exit of the Belt Parkway. The legal rates for the aforesaid tow was $400.00, an overcharge of 37.5%.;

H.      Upon information and belief, on or about July 10, 2019, Defendant Runway charged a consumer and/or Geico Insurance Company, the sum of $403.93 for the towing of a 2019 BMW from the Belt Parkway, an Arterial Highway to Defendant Runway's storage facility in Jamaica, Queens, New York, and failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, charged illegal charges for a "pull out fee" and for a "clean up fee" and overcharged milage charges and overcharge the consumer for storage charges and overcharged the consumer;

I.      Upon information and belief, on or about May 24, 2019, Defendant Runway charged a business the sum of $690.70 instead of approximately $410.00 (the permitted rate for this Arterial Tow) for the towing of a heavy duty truck from the BQE, an Arterial

Highway to the nearest exit, less than a one mile tow, and failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, charged an illegal "labor fee", and overcharged the business; (this charge was 68% greater than permitted by law);

J.    Upon information and belief, on or about April 9, 2019, Defendant Runway charged a trucking company the sum of $1,200.37 for the towing of a dump truck without providing the business owner with any Authorization to Tow form required for a tow on an Arterial Highway, failed to provide the business owner with a breakdown of the charges totaling $1,200.37, demanded that the business owner sign a credit card authorization form to have the vehicle released, and overcharged the business owner;

K.    Upon information and belief, on or about April 3, 2019, Defendant Runway charged a building material company the sum in excess of $1,250.00 for the towing of a 2005 International truck from the Brooklyn Queens Expressway to Atlantic Avenue, in Brooklyn, from an Arterial Highway and Defendant Runway failed to give the business owner an Authorization to Tow form required for a tow on an Arterial Highway, failed to provide the business owner with a breakdown of the charges totaling over $1,250.00 and overcharged the business owner;

L.    Upon information and belief, on or about February 28, 2019, Defendant Runway charged a consumer the sum of $225.00 plus $47.00 in storage charges, when there was no storage of the vehicle, instead of $125.00 (the permitted rate for this Arterial Tow) for the towing of a 2013 Toyota from the Staten Island Expressway, an Arterial Highway, to Brooklyn, which was a tow of less than 10 miles, and Defendant Runway failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, failed to complete the breakdown of tow charges, milage charges, and overcharged the consumer. Defendant Runway offered a cash discount to discount the bill from $303.65 to $250.00 if the motorist paid cash to the driver instead of using a credit card;

M.    Upon information and belief, on or about February 28, 2019, Defendant Runway charged a consumer the sum of $275.00 instead of $145.00 (the permitted rate for this Arterial Tow) for the towing of a 2003 Toyota from the Nasssau Expressway, an Arterial Highway, to the Bronx, which was a tow of approximately 15 miles, and Defendant Runway failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, failed to complete the breakdown of tow charges, milage charges, and overcharged the consumer;

N.    Upon information and belief, on or about February 27, 2019, Defendant Runway charged a consumer the sum of $175.00 plus $7.63 for tolls instead of $125.00 (the permitted rate for this Arterial Tow) for the towing of a 2015 Hyundai from the Dr. Martin Luther King Expressway, an Arterial Highway, to Hylan Boulevard, in Staten Island less than a 10 mile tow, and Defendant Runway charged $7.63 for tolls when there were no tolls incurred by Defendant Runway, for this tow; Defendant Runway failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, failed to complete the breakdown of tow charges, milage charges, and overcharged the consumer;

O.      Upon information and belief, on or about February 27, 2019, Defendant Runway charged a consumer the sum of $225.00 plus $9.80 for tolls instead of $125.00 (the permitted rate for this Arterial Tow) for the towing of a 2003 BMW from the BQE, an Arterial Highway, to to Dyker Heights, Brooklyn, less than a 10 mile tow, and Defendant Runway charged $9.80 for tolls when there were no tolls incurred by Defendant Runway, for this tow within Brooklyn; Defendant Runway failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, failed to complete the breakdown of tow charges, milage charges, and overcharged the consumer  (this charge was 88% greater than permitted by law);

P.      Upon information and belief, on or about February 27, 2019, Defendant Runway charged a consumer the sum of $150.00 instead of $125.00 (the permitted rate for this Arterial Tow) for the towing of a 2013 Toyota from the Staten Island Expressway, an Arterial Highway, to the nearest exit which was a tow of less than 1 mile, and Defendant Runway failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, failed to complete the breakdown of tow charges, milage charges, and overcharged the consumer (this charge was 20% greater than permitted by law);

Q.      Upon information and belief, on or about February 27, 2019, Defendant Runway charged a consumer the sum of $175.00 plus $7.63 for tolls instead of $125.00 (the permitted rate for this Arterial Tow) for the towing of a 2007 Honda from the BQE, an Arterial Highway, to Bay Ridge, Brooklyn, less than a 10 mile tow, and Defendant Runway charged $7.63 for tolls when there were no tolls incurred by Defendant Runway, for this tow within Brooklyn; Defendant Runway failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, failed to complete the breakdown of tow charges, milage charges, and overcharged the consumer;

R.      Upon information and belief, on or about January 18, 2019, Defendant Runway charged a consumer the sum of $225.00 plus $9.80 for tolls instead of $125.00 (the permitted rate for this Arterial Tow) for the towing of a 2017 Nissan from the Staten Island Expressway, an Arterial Highway, to the exit, a tow of approximately 1 mile, and Defendant Runway charged $9.80 for tolls when there were no tolls incurred by Defendant Runway, for this tow from the Staten Island Expressway to the nearest exit; Defendant Runway failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, failed to complete the breakdown of tow charges, milage charges, and overcharged the consumer; (this charge was 88% greater than permitted by law);

S.      Upon information and belief, on or about January 10, 2019, Defendant Runway charged a consumer the sum of $175.00 plus $7.63 for tolls instead of $125.00 (the permitted rate for this Arterial Tow) for the towing of a 2011 Chevrolet from the BQE, an Arterial Highway, to Bay 11th Street in Brooklyn, a tow of less than 10 miles, and Defendant Runway charged $7.63 for tolls when there were no tolls incurred by Defendant Runway, for this tow; Defendant Runway failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, failed to complete the breakdown of tow charges,

milage charges, and overcharged the consumer; (this charge was 46% greater than permitted by law);

T.      Upon information and belief, on or about January 13, 2019, Defendant Runway charged a trucking company the sum in excess of $1,000.00 for the towing of a 2013 Isuzu truck from the West Shore Expressway in Staten Island, an Arterial Highway to Defendant Runway's storage facility in Jamaica, Queens, New York, where the business owner had to retrieve the vehicle more than approximately 20 miles from the place where the vehicle was disabled in Staten Island, New York and towed to a location not convenient for consumers and business owners whose vehicles are towed by Defendant Runway from Staten Island, New York, and Defendant Runway failed to give the business owner an Authorization to Tow form required for a tow on an Arterial Highway, charge illegal pullout fees, and excessive towing fees, storage fees and overcharged the business owner;

U.      Upon information and belief, on or about January 7, 2019, Defendant Runway charged an ambulance company the sum of $328.35 for towing an ambulance three (3) miles, charging $275.00 for the tow, $15.00 for milage charges and $12.62 for credit card charges, which were illegal overcharges in the charged rates; The legal tow rate was $125.00. Upon information and belief, Defendant Runway overcharged the consumer approximately 162%;

V.      Upon information and belief, on or about December 18, 2018, Defendant Runway charged a consumer, the sum of $175.00 for the towing of a 2017 Toyota from the the Belt Parkway to Bay Ridge, a tow of less than 10 miles and Defendant Runway charged $7.63 for tolls when there were no tolls incurred by Defendant Runway, for this tow as it was a Brooklyn to Brooklyn tow with no toll road; The legal tow rate was $125.00. Upon information and belief, Defendant Runway overcharged the consumer approximately 46%;

W.      Upon information and belief, on or about December 18, 2018, Defendant Runway charged a consumer, the sum of $175.00 for the towing of a 2017 Toyota from the the Belt Parkway to Bay Ridge, a tow of less than 10 miles and Defendant Runway charged $7.63 for tolls when there were no tolls incurred by Defendant Runway, for this tow as it was a Brooklyn to Brooklyn tow with no toll road; The legal tow rate was $125.00. Upon information and belief, Defendant Runway overcharged the consumer approximately 46%;

X.      Upon information and belief, on or about December 18, 2018, Defendant Runway charged a consumer, the sum of $150.00 for the towing of a 2007 Toyota from the BQE to Sunset Park, a tow of less than 10 miles and Defendant Runway charged $6.54 for tolls when there were no tolls incurred by Defendant Runway, for this tow as it was a Brooklyn to Brooklyn tow with no toll road; The legal tow rate was $125.00. Upon information and belief, Defendant Runway overcharged the consumer approximately 25%;

Y.      Upon information and belief, on or about December 18, 2018, Defendant Runway charged a consumer, the sum of $150.00 for the towing of a 2007 Toyota from the BQE to Sunset Park, a tow of less than 10 miles and Defendant Runway charged $6.54 for tolls when there were no tolls incurred by Defendant Runway, for this tow as it was a

Brooklyn to Brooklyn tow with no toll road; The legal tow rate was $125.00. Upon information and belief, Defendant Runway overcharged the consumer approximately 25%;

Z.    Upon information and belief, on or about December 18, 2018, Defendant Runway charged a consumer, the sum of $275.00 for the towing of a 2009 Chevy Mini-Bus from the Staten Island Expressway to Exit Tow, a tow of less than 10 miles and Defendant Runway charged $11.98 for tolls when there were no tolls incurred by Defendant Runway, for this tow as it was a Brooklyn to Brooklyn tow with no toll road; The legal tow rate was $125.00. Upon information and belief, Defendant Runway overcharged the consumer approximately 130%;

AA.    Upon information and belief, on or about October 23, 2018, Defendant Runway charged a consumer and/or Geico Insurance Company, the sum of $408.28 for the towing of a 2016 Kia from the Gowanus Expressway, an Arterial Highway to Staten Island, and failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, failed to provide any breakdown of the charges totaling $408.28 and overcharged the consumer;

BB.    Upon information and belief, on or about September 14, 2018, Defendant Runway charged an international shipping company the sum of $610.00 for the towing of a truck from the Brooklyn Queens Expressway to the Kent Avenue Exit of the Brooklyn Queens Expressway, without providing the business owner with any Authorization to Tow form required for a tow on an Arterial Highway, failed to provide the business owner with a breakdown of the charges totaling $610.00, failed to charge sales tax for the towing of a box truck which requires the payment of New York State sales tax, and overcharged the business owner.

CC.    Upon information and belief, on or about May 4, 2018, Defendant Runway charged a consumer the sum of $198.16 for the towing of a 2008 Toyota Prius from the Belt Parkway, an Arterial Highway and failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, failed to complete the breakdown of tow charges, milage charges and storage charges, and overcharged the consumer;

DD.    Upon information and belief, on or about May 4, 2018, Defendant Runway charged a consumer the sum of $169.85 for the towing of a 2004 Ford Explorer from the Belt Parkway, an Arterial Highway to the exit off of the Belt Parkway, and failed to give the consumer an Authorization to Tow form required for a tow on an Arterial Highway, failed to complete the breakdown of tow charges, milage charges and storage charges, and overcharged the consumer.;

EE.    Upon information and belief, between April 1, 2017 and the present date, if there is no Defendant Runway tow truck on the BQE and a motorist needs assistance, and Defendant Runway sends a tow truck from Staten Island to the Brooklyn location, Defendant Runway charges the consumer charges for tolls for the tolls from Staten Island to Brooklyn, which is an unpermitted charge for the motorist in Brooklyn;

14

FF.    Upon information and belief, Geico Insurance Company paid Defendant Runway the sum of $408.28 which was an overcharged amount, in excess of the amounts permitted to be charged by Defendant Runway in accordance with the rules and regulations of the Arterial Towing Service program.

25.    Upon information and belief, Defendant Runway is unfit for servicing the consumer public, by permitting inappropriate conduct, including but not limited to: (i) driver having stated to Plaintiff Abbey, as fully detailed below in this Complaint, when Plaintiff Abbey tried to drive the undamaged Tractor from the Trailer *"dumb fucking nigger, I will kill you"*, (ii) by allowing a tow truck driver to post on social media, upon information and belief, instagram, a photo of himself and the Runway Towing Corp. flatbed with the statement *"When the cheap jew dont wana pay now I gota wait for the cops yayyyyy"* **(Exhibit "1" - redacted)***;* and (iii) a Defendant Runway driver arguing with a female Port Authority Police Officer on or about December 1, 2019,  telling the Police Officer to "respect him" and the Police Officer telling the driver that the driver in the tow truck tried to run the Police Officer off the road and the Police Officer had to point her weapon at the Defendant Runway driver and arrest the Defendant Runway driver.

26.    A Class Action is the best method of providing justice to the Plaintiffs and all those affected by the overcharging of consumers and businesses by Defendant Runway on the Seven Runway Towing Highways. This should should provide the justice to the Plaintiffs and consumers and businesses, because although the evidence of complaints of overcharging by Defendant Runway was and is well publicized, the New York City Police Department ("NYPD") and The New York City Department of Consumer and Worker Protection formerly known as the New York City Department of Consumer Affairs (the "NYC Consumer Affairs") are have been knowingly permitting the overcharging of

consumers and business owners by Defendant Runway and have not provided the enforcement of the New York City Administrative Code to stop the overcharging of consumers and businesses by Defendant Runway.

27.      NYPD and NYC Consumer Affairs have ready access to motorist complaints, Better Business Bureau reviews, Google reviews, and Yelp reviews, all of which if reviewed by the NYPD and NYC Consumer Affairs would lead any reasonable person at such agencies to assess the problems and widespread complaints of overcharging of consumers and businesses by Defendant Runway Some of which reviews which are publically available on the internet are as follows, which the Class Action would protect consumers and businesses and provide justice for:

A.      Google review - 5 days ago- "They overcharge you for no reason and will give a random price as they please. This place is way too expensive. My car got totaled and I donated my car, yet they don't even cooperate with you. When I was taken to get my belongings it was the worst. They have all the cars crammed together where you can't even get in your car due to other damaged cars having their pieces all over the place as well. I noticed that the towing guy was purposely damaging other vehicles even more with his forklift. After having an accident, and being in complete pain, they don't make your situation any easier";

B.      Google review – a month ago – "I had an accident on the Staten Island Expressway and police called this company to tow my car, the day later after I choose my shop I called them to pay my bill and have it picked up first they had me on hold for a half hour and then refused to do anything unless I email them forms and proof of ownership, I explained to them that my registration is in the car and I can send them the Tow ticket I got from the driver and my license, but they just refused, the way this works is they ask you for a million different things to pick up your car so that it stays there for another few days and then they charge you and arm and a leg for storage."

C.      Google review – 3 months ago – "Worse towing company ever. Tow my truck 2 blocks and charge me $690 a complete RIP off. God bless those devils";

D.      Google review – 3 months ago – "Worst Towing Company in the world!! Made a huge inconvenience to me when I live in Staten Island and had me come all the way out to them 14 miles away I had no money no transportation and they did not care about their customer I would never recommend this company to anyone I think somebody

should go and shut down this town company immediately. They are highly rude and disrespectful";

E.         Google review – 3 months ago – "This company is not professional, irresponsible, not countable and charges were much higher than what was on the towing receipt . I am also going to address this case through BBB";

F.         Google review – 3 months ago – "If you ever see in this company driving recklessly please call 311 to speak to a representative and leave them a complaint which is what I did I was driving on the belt parkway with 50 mph on the right lane they passed me at 60 mph the minute he got In front of me he break and I was so close from hitting him this happened Multiple times";

G.         Google review – 4 months ago – "This is a very corrupt and fraudulent company. The customer service is very poor and they will try to scam you out of your hard earned money. Choose another company for your towing services !!!!!!!!!!!!!!!";

H.         Google review – 7 months ago – "These guys deserve negative rating and are a scum big time. Please.. Do not use them under any circumstance. They will hold you hostage and demand lots of money for doing nothing. They will not release your vehicle when required and will give you excuses for it not being released as agreed.. expect a bill 10 times more than market rate for the same.. they are in collusion with NYC police so police won't give you any help dealing with them.. for tows NYC police must be getting some form of kickback from them.. please avoid them like a plague. Take my advice and run when you see them";

I.         Google review – 7 months ago – "Absolutely Abysmal Service & Completely Corrupt Business! Towed our vehicle, then changed the initial charge by over $100 after they already quoted AND charged us for a tow. They claim they made a 'mistake' when they initially quoted the tow, but refused to release the vehicle the same day so they could hold the vehicle at their yard and then proceed to extort us for another $650 to tow our vehicle to our facility less than 25 miles away the next day! BTW, the initial tow was less than 3 miles... We contacted another tow company that recovered our vehicle from them and towed us back to our office for $350; nearly half of what the crooks at Runway were going to charge and that doesn't even include the initial tow. The tow company we contacted knew all about Runway and filled us in on many of the horror stories & countless complaints that they have heard from other customers. They seem to change their rules and quotes and business practices daily in order to maximize their profits and squeeze the most $$$ out of us suckers that they can. All the 1 star reviews are completely accurate and deserved (0 zero stars are what I give them). I have been in logistics for over 10 years and a fleet manager for 3 years and this was the worst wrecker service I have ever dealt with by a mile! They are thieves, liars and have 0 regard for customer service, ethics, or morals. Do not use them under any circumstances if you can avoid it. I will be reporting them to the BBB, which I have confirmed that they currently have an F status with. They have multiple unanswered complaints against them, and I can only imagine how many people that they have ripped off that never bothered to. What they do is criminal and I will make sure to inform all of our

logistics partners in NY & NJ to boycott this establishment and spread the word to avoid using them at all costs";

J.        Better Business Bureau review – 5/8/2019 – "I had a blow out on the West bound Belt Parkway near about 1 mile before the Erskine exit. I called *** and they sent Runway Towing Corp. ###-###-#### ****** * ******* **** ***** ***** ***** **** ***** The driver said he could not help me on the road but would tow me where he could help me just about a mile off the next exit. He towed me off Erskine Exit made a right behind the shopping mall next to a wooded weedy area. He removed my donut and said it needed air. He said his compressor just burnt out. He said to call *** again and he could not help me. He left us there with the contents of my trunk on the floor and charged me $136.00 cash. He said my card was no good. My friend and I gave him all of our money. An hour an a half later *** sent another truck. He towed us to a tire shop very close to where we were and said he could not believe that the other truck did not offer to fill my donut at a nearby gas station or at least tow us to another place. I called Runway to make a complaint. They said a manager would call and he never did. I called back about 1pm they left me on hold for 15 min. The man who said he was a manager was nasty and said these are the rules. I told he I would file a complaint he said have a nice day and hung up on me. My Ticket # is * ***** on 5-*-19 at approximately am";

K.        Google review – 1/16/19 – "Overcharged my credit card for service of a towing on 12/**/2018. Towed thru AAA was told charge was 141.53 which had receipt for but they charged credit card $201.85";

L.        Google review – 6/2/2017 – "My car was towed by them on 5/**/17 This business charged me 490 dollars for the tow. i picked up my car a day later on 5/**/17. They charged me me 75$ for 3 day storage, 125 for the tow, 70$ just so I could leave off the lot, a 50$ flat bed tow fee and other "fee" charges. When I made mention of this they gave me a hard time and didn't want to adjust my bill. After they gave me a new bill for 400$ saying that "was the best they could do" I wanted my car so I was just going to pay then they said I had to pay cash. I found it strange then asked more questions in witch they changed my bill again to 300$ and didnt want to give me a copy of the ticket the tow driver gave me when he took my car in with I was told the tow was only 125. I paid the money to get my car and felt like I was ripped off by robbers who had no professionalism, change my bill three times and it made me out to be incompetent. Businesses like this should not be allowed to be open."

M.        Yelp review - 11/26/2019 – "I don't understand how this place is allowed to get city contracts. This is a bullshit company that can do whatever they want cause they are locked into a contract that makes it possible for them to do whatever the hell they want. The city needs to drop these clowns asap";

N.        Yelp review -12/11/2018 – "One of the drivers tried to run me off the road on the Belt Parkway not two (2) hours ago. Apparently he didn't want to wait his turn to merge so he started honking and suddenly veering into my lane which almost caused me to collide with the vehicle on my opposite side of me. When he saw me taking a picture of the

side of his cab, he again swerved into my line. The driver was an absolute maniac and is going to end up murdering someone".

## NATURE OF THE COMPLAINT

28.     Plaintiff Timothy Abbey is the mananging member of Plaintiff Wolverine Xpress LLC, a company based in Alabama, which is engaged in the transportation of goods and materials in interstate commerce.

29.     Plaintiff Timothy Abbey is a long haul truck driver, whose primary job is driving to transport produce and other products in interstate commerce, and is registered with the United States Department of Transportation, assigned DOT Number 759531.

30.     On or about October 29, 2019, Plaintiff Abbey was driving a 2007 Freightliner ten wheel Tractor (the "Tractor") and 53 foot, eight wheel trailer (the "Trailer"); such Tractor leased by Plaintiff Wolverine on the Brooklyn Queens Expressway ("BQE") to deliver produce which originated in McAllen, Texas.

31.     After leaving McAllen, Texas, Plaintiff Abbey made one delivery in the State of Delaware, then was heading to deliver produce in Maspeth, Queens, New York, when the Trailer became defective.

32.     After the intended delivery to be made in Maspeth, Queens, New York, Plaintiff Abbey intended to make two (2) more stops delivering produce in Brooklyn, New York and then in New Jersey.

33.     Plaintiff Abbey was driving the Tractor connected to and pulling the Trailer for Plaintiff Wolverine, who had picked up produce in McAllen, Texas, including but not limited to 5 pallets of avocados, 10 pallets of tomatoes, 1 pallet of limes, and 2 pallets of peppers (the "Produce"), and Plaintiff Abbey was delivering some of the Produce to a company in Maspeth, Queens, New York within the Eastern District of New York.

34.     At approximately 1:30 a.m. on or about October 29, 2019, while traveling in the Tractor and Trailer on the BQE heading to Maspeth, Queens, New York, Plaintiff Abbey noticed in his rear view mirror that there was a bulging of the trailer wall, which was a result of a pallet of the Produce that shifted and pushed into the side wall of the Trailer, causing the side wall to bulge out. At that time, there was nothing that went out of the of the side wall of the Trailer, and in an abundance of caution, Plaintiff Abbey stopped the Tractor and Trailer and called for towing services to take the Trailer as Plaintiff Abbey felt that the Trailer was unstable for movement.

35.     Plaintiff Abbey used his cell phone and used google to find a towing company. He called a towing company who told Plaintiff Abbey that if he was stuck on the BQE, he needed to call Defendant Runway for assistance.

36.     Plaintiff Abbey called Defendant Runway and two tow trucks appeared at the scene on the Kosciusko Bridge approximately one hour later.

37.     There were no damages to the Tractor or to Plaintiff Abbey when Plaintiff Abbey called Defendant Runway for towing services.

38.     Prior to a tow truck from Defendant Runway arriving at the scene, Plaintiff Abbey disconnected the Tractor from the Trailer and waited until a tow truck from Defendant Runway came to the scene on the BQE.

39.     When employees of Defendant Runway arrived at the location where the Trailer was disabled, they saw that the Tractor was disconnected from the Trailer, and the employees of Defendant Runway reconnected the Trailer to the Tractor, to take the non-disabled Tractor with a value of in excess of approximately $100,000 along with the Trailer

to hold the Tractor as collateral, to ensure that Plaintiff Wolverine would pay for the towing of the damaged Trailer containing the Produce that Plaintiffs were transporting.

40.     After employees of Defendant Runway told Plaintiff Abbey that they were taking the Tractor to ensure payment of the towing bill, Plaintiff Abbey drove the Tractor, which was already disconnected from the Trailer, forward, separating it from the Trailer, so that the employees of Defendant Runway would not take the Tractor which had no damage and was fully operational and drivable.

41.     When Plaintiff Abbey drove the Tractor forward, although the Tractor was disconnected from the Trailer, it caused a vibration to the Trailer while the employees of Defendant Runway were working inside of the Trailer, unloading the Produce onto flatbed trucks so that the Trailer could be towed.

42.     When Plaintiff Abbey moved the Tractor forward, employees of Defendant Runway ran up to the side door of the Tractor and some of the employees of Defendant Runway shouted *"dumb fucking nigger, I will kill you"*, and thereafter, one of the employees of Defendant Runway jumped into the Tractor and took the key out of the ignition of the Tractor.

43.     There were approximately five (5) men who were allegedly employees of Defendant Runway who surrounded Plaintiff Abbey to prevent Plaintiff Abbey from getting back into the Tractor and moving the Tractor, which was not damaged or disabled.

44.     When Plaintiff Abbey had tried to get back into the Tractor, the supervisor from Defendant Runway had climbed on the steps of the Tractor, blocking Plaintiff Abbey and stated: *"you're not getting back in this truck, I promise you, you are not getting back in there"*.

21

45.     Thereafter, an employee of Defendant Runway reconnected the Trailer to the Tractor by inserting a pin into the connection of the Tractor and Trailer.

46.     An employee of Defendant Runway told Plaintiff Abbey to get into the Tractor before they were going to start towing the Tractor and Trailer and the employee told Plaintiff Abbey that he, Plaintiff Abbey, could not travel in the Tow Truck.

47.     Thereafter, employees of Defendant Runway connected a tow truck to the Tractor and lifted the front of the Tractor in the air with the Tractor connected to the Trailer.

48.     There was nothing wrong, defective or unsafe with the Tractor which required towing of the Tractor.

49.     When the Tractor was connected to the Tow Truck and employees of Defendant Runway were unloading the produce from the Trailer, Plaintiff Abbey was in the Tractor behind the wheel, lifted in the air, and Plaintiff Abbey's girlfriend, who was traveling with Plaintiff Abbey, was in the sleeping compartment of the Tractor.

50.     Thereafter, Plaintiff Abbey and his girlfriend found themselves moving, as the employees of Defendant Runway began to tow the Tractor with Plaintiff Abbey in the Tractor behind the wheel (with no key to the ignition, which was previously taken by an employee of Defendant Runway, lifted in the air, and Plaintiff Abbey's girlfriend, in the sleeping compartment of the Tractor.

51.     At some point thereafter, as the Defendant Runway tow truck, with the Tractor and Trailer connected, were moving on the BQE, with Plaintiff Abbey and his girlfriend inside of the sleeping compartment of the Tractor, the Trailer became lose because the Defendant Runway employee failed to properly insert the pin that holds the Trailer to the

Tractor and then when the Trailer became loosened from the Tractor, the Trailer slammed into the Tractor when the tow truck slowed down, causing physical damage to the Tractor and which also caused Plaintiff Abbey to sustain personal injuries to his head and back.

52.     During the towing of the Tractor and Trailer, Plaintiff Abbey noticed in his rear view mirror that the Trailer looked unstable while in motion.

53.     Plaintiff Abbey blew the horn of the Tractor to get the attention of the Defendant Runway employee who was driving the Tow Truck and then suddenly, the Trailer started to disconnect from the Tractor, and while the tow truck was slowing down, the Trailer slammed into the Tractor, and then it disconnected from the Tractor and fell to the ground and was destroyed, due to the negligence of Defendant Runway, which resulted in personal injuries to Plaintiff Abbey, who Defendant Runway should not have allowed to remain in the Tractor during the tow, and property damage to the Tractor and destruction of the Trailer, which prior thereto was in repairable condition.

54.     The Tractor sustained over $10,000 in damages as a result of the conduct and/or negligence of Defendant Runway

55.     Defendant Runway knew that it was against applicable governmental rules, regulations and statutes to permit the passengers, in this case, Plaintiff Abbey and his girlfriend, to be in the vehicle that was being towed.

56.     Because the employees of Defendant Runway were angry that Plaintiff Abbey was trying to take the Tractor, which was completely working and operable, Defendant Runway said that they did not want him driving in the tow truck with the employees of Defendant Runway.

57.     Defendant Runway should not have towed the Tractor as there was nothing wrong with the Tractor and it was not disabled.

58.     Upon information and belief, between April 1, 2017 and October 31, 2017, the NYPD advised towing companies, including Defendant Runway that they are not permitted to take operable tractors when there is damage to a trailer requiring towing.

59.     Upon information and belief, between April 1, 2017 and October 31, 2017, the NYPD advised towing companies in a written document stating that "Tractor Trailer: Company (Towing Company) may not impound the contents of a trailer. If a tractor trailer combo is involved in a collision, bridge strike, etc… and the trailer is compromised but the tractor portion is safe to drive. The Company should only tow the damaged vehicle. They can not impound the tractor (power unit)."

60.     Notwithstanding that the NYPD advised towing companies, including Defendant Runway, that they cannot impound the tractor which were safe to drive, thus Defendant Runway unlawfully and in violation of NYPD regulations and the New York City Administrative Code, impounded the Tractor, which was safe to drive, to ensure that Defendant Runway would be paid for the work involved in the towing of the Trailer.

61.     The Tractor was not a "Disabled vehicle" as defined in the Section 20-495(a) of the New York City Administrative Code.

62.     The Tractor was a "Vehicle" as as defined in the Section 20-495(f) of the New York City Administrative Code.

63.     Prior to Defendant Runway towing the Tractor and Trailer, Plaintiff Abbey demanded that Defendant Runway allow Plaintiff Abbey to take and drive the

Tractor, as the Tractor was not disabled and the Tractor was safe to drive and had suffered no damages.

64.     Defendant Runway refused to allow Plaintiff Abbey to drive the Tractor, stating that they needed to take the Tractor to make sure that Defendant Runway was paid for the towing services.

65.     Defendant Runway took the Tractor to Runway Towing's storage facility in Jamaica, New York and would not release the Tractor to Plaintiffs until Progressive Insurance Company paid approximately $25,000 to Defendant Runway and Plaintiff Wolverine paid approximately $6,000 for the release of the Tractor for a total cost of approximately $31,000 paid to Defendant Runway.

66.     It was not until on or about November 7, 2019 when Progressive Insurance Company, Plaintiff Wolverine's insurer, paid the approximately $25,000 to Defendant Runway and until such time, Defendant Runway refused to release the Tractor to Plaintiffs.

67.     Defendant Runway held the Tractor has as collateral and illegally impounded the Tractor, until such time as Defendant Runway was paid the approximately $31,000 for the towing services.

68.     The charge of approximately $31,000 by Defendant Runway was an excessive amount, amounting to charges in excess of charges permitted by law.

69.     Initially, Defendant Runway demanded that Plaintiff Wolverine and its insurer, Progressive Insurance Company pay the sum of $36,282.59 to Defendant Runway pursuant to the invoice, Defendant Runway invoice # RT46302, as annexed hereto as Exhibit "2" **(the "Runway Invoice")** which was an exaggerated overstated bill, not in compliance

with the rates permitted to be charged under the New York City Administrative Code, for the services provided by Defendant Runway to Plaintiff Wolverine.

70.     The Runway Invoice states "Job Type: Bridge Hit Recovery".

71.     Plaintiff Abbey did not hit any "Bridge" and the work performed by Defendant Runway was not a "Bridge Hit Recovery", although Defendant Runway classified the towing service as a "Bridge Hit" on the Runway Invoice.

72.     Had Defendant Runway permitted Plaintiff Abbey to take and drive the Tractor, and not illegally impound the Tractor, and not have the Tractor towed, there would have been no damages to the Tractor, no damages to the Trailer that could not be repaired, and no personal injuries to Plaintiff Abbey.

73.     The Runway Invoice contained illegal charges, including but not limited to (i) two (2) "Tow Out" fees of $250.00 each; (ii) Administrative Fee and "Pictures" fee of $125.00; (iii) Excessive storage fees; (iv) excessive milage charges; (v) excessive time / hours charged; (vi) 10 hour minimum fee at $500 per hour allegedly for "specialized equipment"; (vii) charges for eight hours of a 50 ton heavy duty wrecker, when the total hours expended by Defendant Runway was approximately 4.5 hours; (viii) charges for ten hours for a forklift, when the total hours expended by Defendant Runway was approximately 4.5 hours; and (ix) other unlawful charges.

74.     When Plaintiff Abbey went to retrieve the Tractor from Defendant Runway's storage facility, he was told on the telephone by an employee of Defendant Runway to pay $250 for the "pull out fee" to retrive the Tractor.

75.     When Plaintiff Abbey arrived at Defendant Runway's storage facility, he was told that he needed to pay $800 for the "pull out fee" to retrive the Tractor, which Plaintiff Abbey paid to Defendant Runway

76.     Section 20-527 of the New York City Administrative Code states that "Credit cards to be accepted in payment. Any person licensed pursuant to the provisions of this subchapter shall accept payment in person by credit card for any fees incurred in accordance with generally accepted business practices".

77.     On November 6, 2019, Plaintiff Abbey contacted Sgt. John Zagilla of the NYPD by telephone and left a voicemail for Sgt. Zagilla to register a complaint against Defendant Runway and the overcharges and the refusal by Defendant Runway to return the Tractor to Plaintiff.

78.     On November 8, 2019, Sgt. John Zagilla of the NYPD returned the phone call to Plaintiff Abbey and Sgt. Zagilla told Plaintiff Abbey that he could not do anything and Plaintiff Abbey had to get a lawyer and could complain to NYC Consumer Affairs. There was no mechanism for Plaintiff Abbey to lodge a complaint with the NYPD concerning the incident that occurred on the Arterial Highway.

79.     Plaintiff Abbey was told by NYPD Sgt. John Zagilla that he did not take complaints and any complaints should be made to NYC Consumer Affairs.

80.     Upon information and belief, Sgt. John Zagilla was fully apprised of the overcharges to Plaintiff Wolverine by Defendant Runway and no action was taken by the NYPD to assist Plaintiff Wolverine to obtain its Tractor and pay the statutory mandated fees, instead of inflated overcharged fees.

81.     As a result of the personal injuries to Plaintiff Abbey, he has been unable to work and earn a living since on or about October 29, 2019.

82.     Plaintiff Abbey has been under medical care due to the personal injuries that he sustained solely as a result of the acts of Defendant Runway.

83.     Due to the personal injuries sustained as a result of the negligence of Defendant Runway and its employees, Plaintiff Abbey was treated at Metro Health – University of Michgan Health in Wyoming, Michigan, and Plaintiff Abbey is continuing to receive medical treatments as a result of the personal injuries that he sustained.

84.     Had Defendant Runway Towing Corp. permitted Plaintiff Abbey to take and drive the Tractor, and not illegally impound the Tractor, and not have the Tractor towed, there would have been no damages to the Tractor, no damages to the Trailer that could not be repaired, and no injuries to Plaintiff Abbey.

85.     Defendant Runway and its employees conduct was predatory and threatening conduct and damaging to all consumers and business persons who require towing services on the Seven Runway Towing Highways.

86.     Plaintiffs as well as to all others similarly situated including consumers, business owners, motorists, owners of vehicles, insurance companies, automobile finance companies, automobile leasing companies, who were compelled to use Defendant Runway for towing services on the Seven Runway Towing Highways have suffered injuries.

## ABOUT DEFENDANT RUNWAY
## AND THE NEW YORK CITY
## ARTERIAL TOWING PROGRAM

87.     Defendant Runway is the exclusive towing company authorized by the NYPD for seven (7) of the seventeen (17) Arterial Highways in the City of New York.

88.     Consumers and business owners, including Plaintiffs, are required to use, and have no alternative but to utilize the towing services of Defendant Runway when any vehicle becomes disabled as a result of mechanical breakdown or accident or otherwise, on (1) the Brooklyn Queens Expressway, from the Queens side of the Kosciusko Bridge to Clinton Street, in Brooklyn; (2) the Cross Island Parkway (Entire Cross Island Parkway) in Queens; (3) the Gowanus Expressway and Prospect Expressway in Brooklyn; (4) the Belt Parkway from 65th Street to Rockaway Parkway in Brooklyn; (5) the Belt Parkway from Rockaway Parkway in Brooklyn to the Laurelton Parkway and Conduit overpass and Queens Nassau Expresseway in Queens; (6) the entire Staten Island Expressway and West Shore Expressway in Staten Island; and (7) Richmond Parkway and Dr. Martin Luther King Jr. Expressway in Staten Island (the "Seven Runway Towing Highways).

89.     Defendant Runway maintains a monopoly on the Seven Runway Towing Highways.

90.     Upon information and belief, there are over 1,000,000 vehicles that travel on the Seven Runway Towing Highways on a daily basis[1].

91.     If a motorist driving any car, truck or motorcycle is one of the approximately, 1,000,000 vehicles that travel on the Seven Runway Towing Highways on a

---

[1] According to the New York State Department of Transportation.

daily basis becomes disabled, the only permitted towing company to tow a disabled vehicle or provide motorist assistance is Defendant Runway.

92.    Since approximately April 1, 2017 to the present date, the NYPD has granted to Defendant Runway, the exclusive right to tow disabled vehicles or provide assistance for disabled vehicles on the Seven Runway Towing Highways, where over 1,000,000 vehicles travel on such New York City Arterial Highways[2].

93.    Upon information and belief, the Cross Island Parkway is approximatley 10.6 miles in length and there are approximately 130,000 vehicles that travel on the Cross Island Parkway on a daily basis and since approximately April 1, 2017, the only company permitted to tow vehicles and provide motorist assistance on said highway is Defendant Runway Towing Corp[3].

94.    Upon information and belief, the Gowanus Expressway is approximatley 6.1 miles in length and there are approximately 175,000 vehicles that travel on the Gowanus Expressway on a daily basis and since approximately April 1, 2017, the only company permitted to tow vehicles and provide motorist assistance on said highway is Defendant Runway Towing Corp[4].

95.    Upon information and belief, the Brooklyn Queens Expressway is approximatley 10.4 miles in length and there are approximately 160,000 vehicles that travel on the Brooklyn section of the Brooklyn Queens Expressway on a daily basis, plus approximately 120,000 vehicles that travel on the Queens section of the Brooklyn Queens Expressway on a daily basis and since approximately April 1, 2017, the only company

---

[2] According to the New York State Department of Transportation.
[3] According to the New York State Department of Transportation.
[4] According to the New York State Department of Transportation.

permitted to tow vehicles and provide motorist assistance on said highway is Defendant Runway Towing Corp [5].

96.     Upon information and belief, the Belt Parkway is approximatley 25.3 miles in length and there are approximately 140,000 vehicles that travel on the "Shore Parkway" section of the Belt Parkway through Brooklyn on a daily basis, approximately 150,000 vehicles that travel on the "Southern Parkway" section of the Belt Parkway near Kennedy Airport on a daily basis, and approximately 135,000 vehicles that travel on the "Laurelton Parkway" section of the Belt Parkway in southeast Queens on a daily basis and since approximately April 1, 2017, the only company permitted to tow vehicles and provide motorist assistance on said highway is Defendant Runway [6].

97.     Upon information and belief, the Staten Island Expressway is approximatley 7.7 miles in length and there are approximately 130,000 vehicles that travel on the Staten Island Expressway on a daily basis through western and central parts of Staten Island, rising to approximately 170,000 vehicles near the Verrazano-Narrows Bridge and since approximately April 1, 2017, the only company permitted to tow vehicles and provide motorist assistance on said highway is Defendant Runway Towing Corp [7].

98.     Upon information and belief, the West Shore Expressway is approximatley 7.7 miles in length and there are approximately 80,000 vehicles that travel on the West Shore Expressway on a daily basis and since approximately April 1, 2017, the only company permitted to tow vehicles and provide motorist assistance on said highway is Defendant Runway Towing Corp [8].

---

[5] According to the New York State Department of Transportation.
[6] According to the New York State Department of Transportation.
[7] According to the New York State Department of Transportation.
[8] According to the New York State Department of Transportation.

99. Defendants have engaged in a fraudulent scheme to overcharge consumers, business persons and insurance companies, by charging rates that are between 50% and over 100% in excess of the rates permitted by law for towing services permitted on New York City Arterial Highways.

100. New York City Administrative Code §509.1 states that "Notwithstanding any other provisions of this subchapter, charges for the towing of disabled passenger vehicles from an arterial roadway by an arterial tow permittee authorized by the commissioner of transportation or the police commissioner shall be one hundred twenty-five dollars for the first ten miles or fraction thereof and four dollars for each additional mile or fraction thereof."

101. Based on New York City Administrative Code §20-509.1, Defendant Runway is only permitted to charge motorist the sum of $125.00 for the towing of disabled passenger vehicles from an arterial roadway for the first ten (10) miles or fraction thereof and four dollars for each additional mile or fraction thereof.

102. Upon information and belief, between April 1, 2017 and the present date, the NYPD gave Defendant Runway a written document which stated what the permitted rates were for which included a rate of $125.00 for the towing of disabled passenger vehicles from an arterial roadway for the first ten (10) miles or fraction thereof and four dollars for each additional mile or fraction thereof.

103. Upon information and belief, between approximately April 1, 2017 and the present date, Defendant Runway has charged thousands of motorists who require towing services on the Seven Runway Towing Highways, sums of approximately $225.00 to over $400.00 for towing charges for tows of less than ten (10) miles, when the maximum rate

that Defendant Runway was and is permitted to charge was and is $125.00 pursuant to New York City Administrative Code §20-509.1.

104.    Often, insurance companies, including but not limited to Progressive Insurance Company, Geico Insurance Company, Allstate Insurance Company and motoring clubs such as the American Automobile Association ("AAA"), pay for towing services for its insureds and/or members, and such companies often reimburse its insured and motorists for the towing charges paid by its insureds and members, including overcharged towing rates which Defendant Runway charged to the thousands of motorists who required towing services on the Seven Runway Towing Highways between approximately April 1, 2017 and the present date.

105.    Upon information and belief, between approximately April 1, 2017 and the present date, insurance companies, including but not limited to Progressive Insurance Company, Geico Insurance Company, Allstate Insurance Company and motoring clubs including but not limited to the AAA, have paid charges from Defendant Runway which charges were in excess of the rates permitted by law, including the maximum charges of $125.00 for towing of less than 10 miles on the Seven Runway Towing Highways pursuant New York City Administrative Code §20-509.1 under the New York City Arterial Towing Program.

106.    The NYPD is or should be aware that Defendant Runway overcharges consumers, business persons and insurance companies, by Defendant Runway charging rates for, *inter alia*, towing services, that are between 50% and over 100% in excess of the legal rates for towing services, permitted by law for towing on New York City Arterial Highways.

107.    NYC Consumer Affairs is the governmental agency that regulates towing companies in the City of New York, including Defendant Runway.

108.    NYC Consumer Affairs licenses more than 75,000 businesses in more than 50 industries and enforces key consumer protection, licensing, and workplace laws that apply to countless more. By supporting businesses through equitable enforcement and access to resources and, by helping to resolve complaints, NYC Consumer Affairs protects the marketplace from predatory practices and strives to create a culture of compliance[9].

109.    NYC Consumer Affairs states on its website that "The Department of Consumer Affairs (DCA) plays a critical role in ensuring that New Yorkers continue to flourish as business owners, consumers, and workers. As the oldest municipal consumer protection agency in the country, DCA licenses, inspects, and educates businesses; assists and informs consumers…"

110.    Upon information and belief, between approximately April 1, 2017 and the present date, NYC Consumer Affairs has permitted Defendant Runway to engage in illegal conduct with Defendant Runway complying with applicable laws, rules and regulations, including but not limited to New York City Administrative Code §20-509.1, causing harm of consumers, businesses and insurance companies.

111.    Upon information and belief, between approximately April 1, 2017 and the present date, NYC Consumer Affairs has permitted Defendant Runway to engage in predatory practices causing harm of consumers, businesses and insurance companies.

112.    Upon information and belief, between approximately April 1, 2017 and the present date, NYC Consumer Affairs is and should have been aware that Defendant

---

[9] See WWW.NYC.GOV

Runway has a predatory practice of overcharging consumers, businesses and insurance companies, by Defendant Runway charging rates for, *inter alia*, towing services, that are between 50% and over 100% in excess of the legal rates for towing services, permitted by law, pursuant to New York City Administrative Code §20-509.1,  for towing on New York City Arterial Highways.

113.    Due to the lack of enforcement of governmental rules, regulations, laws, statutes, including but not limited to New York City Administrative Code §20-509.1, Defendant Runway has been able to engaged in its predatory practices of overcharging consumers, businesses and insurance companies by providing towing services on New York City's Arterial Highways.

114.    New York City Administrative Code §20-529 states that "Beginning on November 15, 2011 and annually on that date thereafter, the NYC Consumer Affairs shall submit a report to the council concerning violations issued to tow truck licensees. Such annual report shall contain data from the preceding twelve months that includes but is not limited to: (a) the total number of violations issued, disaggregated by section of the administrative code violated; (b) the total number of violations issued to each licensee; (c) the number of license suspensions, disaggregated by licensee; (d) the number of license revocations, disaggregated by licensee; and (e) the total number of meetings of the tow advisory board.

115.    The NYC Consumer Affairs released a "Tow Truck Industry Compliance Report" covering the period October 1, 2018 through September 30, 2019 as required by New York City Administrative Code §20-529 (the "Tow Truck Industry Compliance Report").

116.    Listed in Section III of the Tow Truck Industry Compliance Report, in the section entitled "Number of License Suspensions, Disaggregated by Licensee", it states that Defendant Runway, License # 1196757-DC had a suspension of its license between October 1, 2018 through September 30, 2019.

117.    Upon information and belief, between October 1, 2018 through September 30, 2019, the towing license of Defendant Runway, issued by NYC Consumer Affairs was suspended and such suspension was known to the NYPD.

118.    Section 20-522.1(b) of the New York City Administrative Code entitled "Violations for Operating without a License" states that:

> "Any police officer or authorized officer or employee of the department, upon service upon the owner or operator of a tow truck of a notice of violation for engaging in any activity for which a license is required pursuant to subdivision a of section 20-496 of this subchapter without such license, may seize a tow truck which such police officer or authorized officer or employee has reasonable cause to believe is being used in connection with such a violation. Any vehicle seized pursuant to this subdivision shall be delivered into the custody of the department or other appropriate agency…".

119.    Upon information and belief, the NYPD knew that between October 1, 2018 through September 30, 2019, Defendant Runway's license was suspended, however, the NYPD continued to allow Defendant Runway to tow vehicles from the Seven Runway Towing Highways during such period of suspension.

120.    Upon information and belief, notwithstanding the fact that the the towing license of Defendant Runway issued by the NYC Consumer Affairs was suspended and such suspension was known to the NYPD, the NYPD continued to allow Defendant Runway to operate on the Seven Runway Towing Highways, during such suspension period.

121.   Upon information and belief, notwithstanding the fact that the the towing license of Defendant Runway issued by the NYC Consumer Affairs was suspended, NYC Consumer Affairs continued to allow Defendant Runway to operate on the Seven Runway Towing Highways, during such suspension period.

122.   Defendant Runway has engaged in unlawful conduct while operating on the seven (7) of the seventeen (17) New York City Arterial Highways for which the NYPD has granted Defendant Runway a monopoly on the NYPD and has made Defendant Runway the exclusive towing company on those seven (7) Arterial Highways which has caused injuries to Plaintiff as well as to all others similarly situated including consumers, business owners, motorists, owners of vehicles, insurance companies, automobile finance companies, automobile leasing companies, who were compelled to use Defendant Runway for towing services on the Seven Runway Towing Highways.

### CONSUMER AFFAIRS TO PROTECT CONSUMERS AND BUSINESS PERSONS AND THE NEW YORK POLICE DEPARTMENT ARTERIAL TOW PROGRAM

123.   NYC Consumer Affairs was created on April 29, 1969 when the New York City Council passed the landmark Consumer Protection Law that gave the agency its broad authority to protect the public from deceptive business practices.

124.   Upon information and belief, between approximately April 1, 2017 and the present date, Defendant Runway has been engaging in deceptive business practices.

125.   Upon information and belief, between approximately April 1, 2017 and the present date, Defendant Runway has been, knowingly to NYC Consumer Affairs, engaging in deceptive business practices.

126.    Upon information and belief, between approximately April 1, 2017 and the present date, Defendant Runway has been, knowingly to the NYPD, engaging in deceptive business practices.

127.    Upon information and belief, Defendant Runway has been granted special privileges to operate on the Seven Runway Towing Highways by, upon information and belief, the Office of the Mayor of the City of New York.

128.    Upon information and belief, the Office of the Mayor of the City of New York has directed NYC Consumer Affairs to refrain from enforcing the laws, rules and regulations, including the New York City Administrative Code against Defendant Runway

129.    Upon information and belief, the Office of the Mayor of the City of New York has directed NYPD to refrain from enforcing the laws, rules and regulations, including the New York City Administrative Code against Defendant Runway.

130.    Since at least April 1, 2017, thousands of consumers and businesses whose vehicles became disabled while traveling in the City of New York on the Seven Runway Towing Highways, and have been overcharged in the charges for towing services.

131.    Since at least April 1, 2017, insurance companies and motorist clubs whose insured's and member's vehicles became disabled while traveling in the City of New York on the Seven Runway Towing Highways, and have been overcharged in the charges for towing services.

132.    Defendants have used a varity of illegal conduct to deceive consumers and businesses into believing that the rates that Defendant Runway Towing charges for the towing of vehicles on the Seven Runway Towing Highways was legal and proper, when in fact, the rates were in excess of the amounts permitted to be charged by law.

133.    According to the NYPD, the Arterial Tow Services provided by towing companies includes patrolling arterial highways, providing emergency towing and road service assistance as well as providing vehicle storage and redemption services of towed vehicles – twenty four (24) hours per day, seven (7) days per week, including Holidays.

134.    The NYPD ("NYPD") is responsible for managing the Arterial Towing in New York City highways pursuant to NYPD's authority under the Rules of New York City, Section 4-07(i).

135.    As part of the Arterial Towing responsibilities, the NYPD has issued permits to approved towing vendors selected by a competitive application process.

136.    Since approximately April 2017, the NYPD gave Defendant Runway exclusive permits to Defendant Runway, who since approximately April 2017 has been the exclusive permit holder for seven (7) of the seventeen (17) arterial highways in the City of New York in a no-bid award process.

137.    Upon information and belief, NYPD has given Defendant Runway a monopoly on seven (7) of the seventeen (17) arterial highways just through the decision of the NYPD Police Commissioner or Assistant Police Commissioner without any bidding process.

138.    Upon information and belief, on March 31, 2017 permits issued under the Arterial Tow Services expired and on April 1, 2017, the NYPD appointed Defendant Runway to be the exclusive towing company to provide Arterial Tow Services, including patrolling arterial highways, providing emergency towing and road service assistance as well as providing vehicle storage and redemption services of towed vehicles – twenty four (24)

hours per day, seven (7) days per week, including Holidays for 41% of the New York City Arterial Highways (7 of the 17 Arterial Highway segments) in a no-bid process.

139.     The NYPD created an atmosphere to allow Defendant Runway to engage in racketeering activity.

140.     New York City Arterial Highways are subdivided into seventeen (17) segments.

141.     Each Arterial Highway Segment which has commercial vehicle restrictions, are divided into corresponding sub-segments for towing vehicles at or under 18,000 pounds and vehicles over 18,000 pounds.

142.     According to the NYPD Request for Applications issued by the NYPD – Contract Administration Unit for Arterial Tow Services in 2017, it states on paragraph "3" of page 3 that "Applicants may submit applications for up to three (3) arterial highway segments".

143.     Notwithstanding the fact that when the NYPD was accepting Applications Arterial Tow Services in 2017, that the NYPD stated that no applicant, no towing company could apply for more than three (3) arterial highway segments, the NYPD has awarded Defendant Runway seven (7) arterial highway segments, in a no-bid award process.

144.     Since approximately April 1, 2017 to the present date, the NYPD has granted exclusivity to Defendant Runway to operate on seven (7) of the seventeen (17) New York City Arterial Highways, where only Defendant Runway has since approximately April 1, 2017, been the only towing company permitted to remove passenger vehicles and

commercial vehicles from the seven (7) of the seventeen (17) New York City Arterial Highways which highways has a volume of over 1,000,000 cars per day.

145.    Defendant Runway has used its exclusive permit to operate on the seven (7) of the seventeen (17) New York City Arterial Highways to, upon information and belief, create and engage in a racketeering enterprise used to overcharge consumers, business owners, motorists, owners of vehicles, insurance companies, automobile finance companies, automobile leasing companies.

146.    It has been and is detrimental to the consumers and business owners who travel on the New York City Arterial Highways, where they are forced to use Defendant Runway, who has blatently regularly engaged in overcharging consumers and business persons and engaged in unlawful conduct to motorists, including Plaintiffs, while operating on the seven (7) of the seventeen (17) New York City Arterial Highways for which the NYPD has granted Defendant Runway a monopoly.

147.    It has been and is detrimental to insurance companies who insure consumers and business owners who travel on the New York City Arterial Highways, where the insurance companies, including Progressive Insurance Company are forced to pay Defendant Runway for services charged by Defendant Runway, in excess of the charges permitted by law for Arterial Towing Services including the New York City Administrative Code §20-509.1.

148.    It has been and is detrimental to automobile finance companies whose financed vehicles are towed and not retrived by a motorist who transverses the New York City Arterial Highways, where the automobile finance companies are forced to pay

Defendant Runway for services charged by Defendant Runway, in excess of the charges permitted by law for Arterial Towing Services.

149.    It has been and is detrimental to automobile leasing companies whose financed vehicles are towed and not retrived by a motorist who transverses the New York City Arterial Highways, where the automobile leasing companies are forced to pay Defendant Runway for services charged by Defendant Runway, in excess of the charges permitted by law for Arterial Towing Services.

150.    Upon information and belief, Defendant Runway has used its monopoly on the seven (7) of the seventeen (17) New York City Arterial Highways to tow tens of thousands of cars and trucks from the seven (7) New York City Arterial Highways since approximately April 2017.

151.    Defendant Runway was issued the exclusive permits for the seven (7) arterial highways in the City of New York by the NYPD, without any bidding process by Defendant Runway.

152.    Defendant Runway was handpicked and given the exclusive permit for the seven (7) of the seventeen (17) New York City Arterial Highways by the NYPD with a no-bid process, wherein, upon information and belief, the Assistant Commissioner of the NYPD gave the exclusive permit for the seven (7) of the seventeen (17) New York City Arterial Highways without competitive bidding.

153.    Upon information and belief, the NYPD does not prevent Defendant Runway from overcharging motorists using Defendant Runway's towing services on the seven (7) of the seventeen (17) New York City Arterial Highways.

154.     Upon information and belief, the NYPD knows that Defendant Runway has, from approximately April 2017 to the present date, overcharged motorists in an amount estimated to be millions of dollars, who have no alternative but to use Defendant Runway's towing services on the seven (7) of the seventeen (17) New York City Arterial Highways.

155.     Upon information and belief, the NYC Consumer Affairs knows that Defendant Runway has, from approximately April 2017 to the present date, overcharged motorists by possibly millions of dollars, who have no alternative but to use Defendant Runway's towing services on the seven (7) of the seventeen (17) New York City Arterial Highways.

156.     If any motorist's vehicle becomes disabled on any of the seven (7) arterial highways in the City of New York for which Defendant Runway is the exclusive permit holder, the motorist must use, and has no choice but to use the services of Defendant Runway   The motorist may not use any other towing company, other than Defendant Runway, to enter onto the arterial highways to remove any disabled vehicles.

157.     Upon information and belief, the Arterial Towing Program was established by the NYPD pursuant to statute.

158.     Upon information and belief, the Arterial Towing Program was and is administed by the NYPD, Contract Administration Unit, located at 90 Church Street, New York, New York.

159.     Upon information and belief, New York Police Department Assistant Commissioner Frank Bello is the assistant commissioner in charge of the Contract Administration Unit for the NYPD.

160.    Upon information and belief, New York Police Department Assistant Commissioner Frank Bello is aware of complaints made by motorists who have had no alternative but to use Defendant Runway on the seven (7) of the seventeen (17) arterial highways.

161.    Upon information and belief, the Arterial Towing Program was and is administed by the NYC Consumer Affairs.

162.    Upon information and belief, Defendant Runway, Defendant Cynthia and Defendant Chris are using the powers granted to Defendant Runway to engage in a racketeering enterprise, causing damages to consumers, business owners, insurance companies, automobile finance companies and automobile leasing companies located within and outside of the State of New York.

163.    Upon information and belief, members of the NYPD are aware of the racketeering activities of Defendant Runway, Defendant Cynthia and Defendant Chris and are permitting the continuation of racketeering activity because the NYPD is disregarding the conduct of Defendant Runway, Defendant Cynthia and Defendant Chris because the NYPD's principal concern is the removal of disabled vehicles from the arterial highways.

164.    Upon information and belief, the NYC Consumer Affairs is aware of the racketeering activities of Defendant Runway, Defendant Cynthia and Defendant Chris and are permitting the continuation of racketeering activity because the NYPD has requested that the NYC Consumer Affairs not suspend or revoke the licnese of Defendant Runway, Defendant Cynthia and Defendant Chris because the NYPD's principal concern is the removal of disabled vehicles from the arterial highways and at this time, Defendant Runway controls 41% of all of the arterial highways in New York City (7 of the 17 segments).

165.    If any motorist's vehicle, whether a passenger car or an eighteen wheel tractor trailer and any other type of vehicle becomes disabled on an arterial highway in New York, there is a 41% change that it must only be towed by Defendant Runway, and there is no competition permitted by the NYPD on the arterial highways.

166.    The New York City Administrative Code establishes and the NYC Consumer Affairs enforces the rates that are permitted to be charged by any towing company towing vehicles from an arterial highway.

167.    Upon information and belief, Defendant Runway disregarded and disregards the maximum legal towing rates permitted for charging consumers, business owners, insurance companies, automobile finance companies and automobile leasing companies from the New York City Arterial Highways that Defendant Runway is the exclusive permit holder for.

168.    Upon information and belief, Defendant Runway abuses its powers as the exclusive towing company on the seven (7) arterial highways by overcharging consumers, business owners, insurance companies, automobile finance companies and automobile leasing companies located inside and outside of New York City.

169.    Defendant Runway, Defendant Cynthia and Defendant Chris are using the powers granted to Defendant Runway to engage in a racketeering enterprise, causing damages to consumers, business owners, insurance companies, automobile finance companies and automobile leasing companies located within and outside of the State of New York.

170.    Upon information and belief, Defendant Runway is the only towing company permitted to tow disabled vehicles, including trailers from the:

(i)      Brooklyn Queens Expressway, from the Queens side of the Kosciusko Bridge to Clinton Street, in Brooklyn, which is known as "Segment 7" of the NYPD Arterial Towing Program;

(ii)     Cross Island Parkway (Entire Cross Island Parkway) in Queens, which is known as "Segment 9" of the NYPD Arterial Towing Program;

(iii)    Gowanus Expressway and Prospect Expressway in Brooklyn, which is known as "Segment 13" of the NYPD Arterial Towing Program;

(iv)     Belt Parkway from 65th Street to Rockaway Parkway in Brooklyn which is known as "Segment 14" of the NYPD Arterial Towing Program;

(v)      Belt Parkway from Rockaway Parkway in Brooklyn to the Laurelton Parkway and Conduit overpass and Queens Nassau Expresseway in Queens, which is known as "Segment 15" of the NYPD Arterial Towing Program;

(vi)     Entire Staten Island Expressway and West Shore Expressway in Staten Island which is known as "Segment 16" of the NYPD Arterial Towing Program;

(vii)    Richmond Parkway and Dr. Martin Luther King Jr. Expressway in Staten Island which is known as "Segment 17" of the NYPD Arterial Towing Program.

171.    On or about February 20, 2017, Alexander P. Kelly, Esq. of the Law Office of Alexander P. Kelly, PC wrote a letter to Assistant Commissioner Frank Bello of the NYPD stating that Law Office of Alexander P. Kelly, PC represents "Autorama Enterprises, Inc., Knights Collision Experts, Inc., Runway Towing, Inc. and Universe Towing, Inc."[10] (the "Kelly Letter").

---

[10] Lawsuit filed in Supreme Court of the State of New York, County of New York, Index No. 153697/2017, NYS CEF Doc. No. 11.

172.    The Kelly Letter sought information on behalf of Autorama Enterprises, Inc., Knights Collision Experts, Inc., Runway Towing, Inc. and Universe Towing, Inc.

173.    Upon information and belief, after receiving the Kelly Letter, the NYPD decided to refrain from seeking bids from any towing companies to operate on the Arterial Highways and permitted Defendant Runway to operate on seven (7) of the seventeen (17) Arterial Highways and to this date, Defendant Runway continues to be the exclusive towing company on seven (7) of the seventeen (17) Arterial Highways, abusing consumers and businesses by their consistent and repeated practice of overcharges, and all with impunity from penalty or consequences for its unlawful acts from the NYPD and the NYC Consumer Affairs.

174.    Upon information and belief, from approximately April 2017 to the present date, Defendant Runway failed to use Authorization to Tow forms authorized by the NYPD for use on the Arterial highways.

175.    Section 20-510 of the New York City Administrative Code states that; "The authorization shall be on a form prescribed by the commissioner which shall require such information as the commissioner prescribes by rule, including the following information: the licensee's name, address and business telephone number, the license assigned to such business, the department's telephone complaint number, the rates permitted to be charged for towing and storage under section 20-509 of this subchapter, the location from which and the destination to which the vehicle is to be towed, the year, the make, the model and the department of motor vehicles license plate number of the vehicle to be towed, the name of the person in charge of the vehicle, the time of the request for service and any

other information to be prescribed by rule of the commissioner. The form must also contain the following language: "This is an authorization for towing and, where requested, for storage and not an authorization to repair. You have the right to have your vehicle repaired at the facility of this towing company or any other establishment of your choice." Every authorization form shall be executed and copies thereof shall be furnished to such parties and in such manner as the commissioner may provide by rule."

176.    Upon information and belief, between April 1, 2017 and the present date, Defendant Runway fails to provide Authorization to Tow Forms in compliance with Section 20-510 of the New York City Administrative Code to motorists and businesses requiring towing services.

177.    Upon information and belief, from approximately April 2017 to the present date, Defendant Runway's Authorization to Tow forms did not and does not comply with the samples promulgated by the NYPD required to be used for towing and towing services on New York City Arterial Highways.

178.    Upon information and belief, from approximately April 2017 to the present date, Defendant Runway has not forwarded scanned tow slips for all serviced vehicles and monthly towing activity to the Arterial Tow Coordinator of the NYPD by the 5th day of the following month as required by NYPD rules and/or regulations.

179.    Upon information and belief, from approximately April 2017 to the present date, the NYPD does not require Defendant Runway to comply with law, rules and/or regulations by not requiring Defendant Runway to forward scanned tow slips for all serviced vehicles and monthly towing activity to the Arterial Tow Coordinator of the NYPD by the 5th day of the following month as required by NYPD rules and/or regulations.

180.    Upon information and belief, from approximately April 2017 to the present date, Defendant Runway's tow truck drivers did not and do not regularly complete all areas of Authorization to Tow forms and do not complete as required the total charge for service, starting milage, locations, all services provided to the motorist on tow jobs on the seven (7) arterial highway segments for which Defendant Runway is the exclusive permit holder.

181.    Upon information and belief, when a vehicle is towed at the direction of a Police Officer or Traffic Enforcement Agent and the person in charge of the vehicle is not present or refuses to sign the release form, Defendant Runway is required to, but fails to obtain the signature of the Police Officer or Traffic Enforcement Agent who directed the removal of the vehicle.

182.    Upon information and belief, Defendant Runway has and does routinely remove vehicles from New York City Arterial Highways to Defendant Runway's storage facility in Jamaica, County of Queens, New York, although a consumers, business owners, insurance companies, automobile finance companies and automobile leasing companies has the right to have their vehicle towed off of the exit of the seven (7) Arterial Highways. The consumers, business owners, insurance companies, automobile finance companies and automobile leasing companies has the right to have the disabled vehicle towed from the exit to any location where the owner or driver of the vehicle desires the vehicle to be towed to. Towing the disabled vehicle to Defendant Runway's Storage facility in Jamaica, Queens, New York, instead of to a location closer to the location of the disabled vehicle, causes increases in revenue to Defendant Runway to the detriment of consumers,

business owners, insurance companies, automobile finance companies and automobile leasing companies.

183.    Upon information and belief, when a motorist becomes disabled on the Brooklyn Queens Expressway in Brooklyn, New York, such motorist has to retrieve his, her or their vehicle from Defendant Runway's Jamaica, Queens, New York storage facility, where the motorist has to travel to in order to retrieve his or her vehicle..

184.    Upon information and belief, the NYPD knows and permits Defendant Runway to tow a motorist's disabled vehicle from the Brooklyn Queens Expressway in Brooklyn, New York, to Defendant Runway's Jamaica, Queens, New York storage facility, where the motorist has to travel to in order to retrieve his or her vehicle..

185.    Upon information and belief, the NYC Consumer Affairs knows and permits Defendant Runway to tow a motorist's disabled vehicle from the Brooklyn Queens Expressway in Brooklyn, New York, to Defendant Runway's Jamaica, Queens, New York storage facility, where the motorist has to travel to in order to retrieve his or her vehicle..

186.    Upon information and belief, when a motorist becomes disabled on the Gowanus Expressway and/or Prospect Expressway in Brooklyn, New York, the motorist has to retrieve his, her or their vehicle from Defendant Runway's Jamaica, Queens, New York storage facility, where the motorist has to travel to in order to retrieve his or her vehicle..

187.    Upon information and belief, the NYPD knows and permits Defendant Runway to tow a motorist's disabled vehicle from the Gowanus Expressway and/or Prospect Expressway in Brooklyn, New York, to Defendant Runway's Jamaica, Queens, New York storage facility, where the motorist has to travel to in order to retrieve his or her vehicle..

188.    Upon information and belief, the NYC Consumer Affairs knows and permits Defendant Runway to tow a motorist's disabled vehicle from the Gowanus Expressway and/or Prospect Expressway in Brooklyn, New York, to Defendant Runway's Jamaica, Queens, New York storage facility, where the motorist has to travel to in order to retrieve his or her vehicle..

189.    Upon information and belief, when a motorist becomes disabled on the Belt Parkway in Brooklyn, New York, such motorist has to retrieve his, her or their vehicle from Defendant Runway's Jamaica, Queens, New York storage facility, where the motorist has to travel to in order to retrieve his or her vehicle..

190.    Upon information and belief, the NYPD knows and permits Defendant Runway to tow a motorist's disabled vehicle from the Belt Parkway in Brooklyn, New York, to Defendant Runway's Jamaica, Queens, New York storage facility, where the motorist has to travel to in order to retrieve his or her vehicle..

191.    Upon information and belief, the NYC Consumer Affairs knows and permits Defendant Runway to tow a motorist's disabled vehicle from the Belt Parkway in Brooklyn, New York, to Defendant Runway's Jamaica, Queens, New York storage facility, where the motorist has to travel to in order to retrieve his or her vehicle..

192.    Upon information and belief, when a motorist becomes disabled on the Staten Island Expressway, the West Shore Expressway, Richmond Parkway, or the Dr. Martin Luther King Expressway in Staten Island, New York, such motorist has to retrieve his, her or their vehicle from Defendant Runway's Jamaica, Queens, New York storage, where the motorist has to travel to in order to retrieve his or her vehicle. facility.

193.    Upon information and belief, the NYPD knows and permits Defendant Runway to tow a motorist's disabled vehicle from the Staten Island Expressway, the West Shore Expressway, Richmond Parkway, or the Dr. Martin Luther King Expressway in Staten Island, New York, to Defendant Runway's Jamaica, Queens, New York storage facility, where the motorist has to travel to in order to retrieve his or her vehicle..

194.    Upon information and belief, the NYC Consumer Affairs knows and permits Defendant Runway to tow a motorist's disabled vehicle from the Staten Island Expressway, the West Shore Expressway, Richmond Parkway, or the Dr. Martin Luther King Expressway in Staten Island, New York, to Defendant Runway's Jamaica, Queens, New York storage facility where the vehicle is towed to and stored at increases in the towing costs to the consumers, business owners, insurance companies, automobile finance companies and automobile leasing companies while increases the burden to the consumers, business owners, insurance companies, automobile finance companies and automobile leasing companies for retrieving the motorist's vehicle which the NYC Consumer Affairs permits which increases the revenues of Defendant Runway by the no-bid award of the seven (7) exclusive permits under the Arterial Tow Services program administered by the NYPD.

195.    Upon information and belief, the NYPD rules and regulations regarding Arterial Tow Services requires Defendant Runway to notify the registered owner of a vehicle removed by Defendant Runway without the registered owner signing an Authorization to Tow form, by certified mail, return receipt requested within 48 hours of removal of the vehicle to Defendant Runway's storage facility.

196.    Upon information and belief, Defendant Runway routinely fails to provide the registered owner of a vehicle removed by Defendant Runway without the

registered owner signing an Authorization to Tow form, written notification by certified mail, return receipt requested within 48 hours of removal of the vehicle to Defendant Runway's storage facility of the vehicle's removal Defendant Runway's Failure to provide notice causes and has caused excessive storage charges to consumers, business owners, insurance companies, finance companies and leasing companies who pay Defendant Runway's storage fees for storage of vehicles  which they were never notified were towed and in the posession of Defendant Runway.

197.    Upon information and belief, Defendant Runway routinely fails to provide the registered owner of a vehicle removed by Defendant Runway without the registered owner signing an Authorization to Tow form, notice by certified mail, return receipt requested within 48 hours of removal of the vehicle to Defendant Runway's storage facility of the vehicle's removal, which resulted and results in excessive storage charges for storage of vehicles charged by Defendant Runway to consumers, business owners, insurance companies, finance companies and leasing companies who pay storage fees for storage of vehicles that they did not know where there vehicle was towed to.

198.    Upon information and belief, the NYPD knows that Defendant Runway routinely fails to provide the registered owner of a vehicle removed by Defendant Runway without the registered owner signing an Authorization to Tow form, written notification by certified mail, return receipt requested within 48 hours of removal of the vehicle to Defendant Runway's storage facility of the vehicle's removal; which resulted and results in excessive storage charges for storage of vehicles charged by Defendant Runway to consumers, business owners, insurance companies, finance companies and leasing companies

who pay storage fees for storage of vehicles which they were never notified were towed and in the posession of Defendant Runway.

199. Upon information and belief, the NYC Consumer Affairs knows that Defendant Runway routinely fails to provide the registered owner of a vehicle removed by Defendant Runway without the registered owner signing an Authorization to Tow form, written notification by certified mail, return receipt requested within 48 hours of removal of the vehicle to Defendant Runway's storage facility of the vehicle's removal; which resulted and results in excessive storage charges for storage of vehicles charged by Defendant Runway to consumers, business owners, insurance companies, finance companies and leasing companies who pay storage fees for storage of vehicles which they were never notified were towed and in the posession of Defendant Runway.

200. Upon information and belief, the NYPD rules and regulations regarding Arterial Tow Services requires Defendant Runway to send a second written notification within ten (10) days of the tow to notify the registered owner of a vehicle removed by Defendant Runway.

201. Upon information and belief, Defendant Runway routinely fails to provide the registered owner of a vehicle removed by Defendant Runway without the registered owner signing an Authorization to Tow form, a second written notification within ten (10) days of the tow to notify the registered owner of a vehicle removed by Defendant Runway.

202. Upon information and belief, Defendant Runway routinely fails to provide the registered owner of a vehicle removed by Defendant Runway without the registered owner signing an Authorization to Tow form, a second written notification within

ten (10) days of the tow to notify the registered owner of a vehicle removed by Defendant Runway; which resulted and results in excessive storage charges for storage of vehicles charged by Defendant Runway to consumers, business owners, insurance companies, finance companies and leasing companies who pay storage fees for storage of vehicles that which they were never notified were towed and in the posession of Defendant Runway.

203.    Upon information and belief, the NYPD knows that Defendant Runway routinely fails to provide the registered owner of a vehicle removed by Defendant Runway without the registered owner signing an Authorization to Tow form, a second written notification within ten (10) days of the tow to notify the registered owner of a vehicle removed by Defendant Runway; which resulted and results in excessive storage charges for storage of vehicles charged by Defendant Runway to consumers, business owners, insurance companies, finance companies and leasing companies who pay storage fees for storage of vehicles which they were never notified were towed and in the posession of Defendant Runway.

204.    Upon information and belief, the NYC Consumer Affairs knows that Defendant Runway routinely fails to provide the registered owner of a vehicle removed by Defendant Runway without the registered owner signing an Authorization to Tow form, a second written notification within ten (10) days of the tow to notify the registered owner of a vehicle removed by Defendant Runway; which resulted and results in excessive storage charges for storage of vehicles charged by Defendant Runway to consumers, business owners, insurance companies, finance companies and leasing companies who pay storage fees for storage of vehicles which they were never notified were towed and in the posession of Defendant Runway.

205.    Upon information and belief, the NYPD rules and regulations regarding Arterial Tow Services, including New York City Administrative Code §20-528, requires Defendant Runway to deliver Authorization to Tow Slips to the NYPD precinct of record within two (2) hours of removal of a vehicle from an Arterial Highway.

206.    Upon information and belief, Defendant Runway routinely fails to deliver Authorization to Tow Slips to the NYPD precinct of record within two (2) hours of removal of a vehicle from an Arterial Highway.

207.    Upon information and belief, Defendant Runway routinely fails to deliver Authorization to Tow Slips to the NYPD precinct of record within two (2) hours of removal of a vehicle from an Arterial Highway, which resulted and results in excessive storage charges for storage of vehicles charged by Defendant Runway to consumers, business owners, insurance companies, finance companies and leasing companies who pay storage fees for storage of vehicles which they were never notified were towed and in the posession of Defendant Runway.

208.    Upon information and belief, the NYPD knows that Defendant Runway routinely fails to deliver Authorization to Tow Slips to the NYPD precinct of record within two (2) hours of removal of a vehicle from an Arterial Highway, which resulted and results in excessive storage charges for storage of vehicles charged by Defendant Runway to consumers, business owners, insurance companies, finance companies and leasing companies who pay storage fees for storage of vehicles which they were never notified were towed and in the posession of Defendant Runway.

209.    Upon information and belief, the NYC Consumer Affairs knows that Defendant Runway routinely fails to deliver Authorization to Tow Slips to the NYPD

precinct of record within two (2) hours of removal of a vehicle from an Arterial Highway, which resulted and results in excessive storage charges for storage of vehicles charged by Defendant Runway to consumers, business owners, insurance companies, finance companies and leasing companies who pay storage fees for storage of vehicles which they were never notified were towed and in the posession of Defendant Runway.

210.   Upon information and belief, the NYPD rules and regulations regarding Arterial Tow Services requires Defendant Runway to charge (i) hoisting and towing rates, (ii) milage rates,  (iii) storage rates for first three days, (iv) storage rates for each day after three days, (v) gasoline deliver charges, (vi) removing flat tire and replacing spare tire charges, (vii) battery boost charges, (viii) heavy duty towing rates for preparation, hoisting and towing for 1st mile or fraction thereof, (ix) prescribed rates for vehicles between 4,500 pounds and 10,000 pounds, (x) prescribed rates for vehicles between 10,000 pounds and 18,000 pounds, (xi) use of underlifts, (xii) storage charges for vehicles over 10,000 pounds, (xiii) prescribed rates for vehicles over 25,000 pounds, (xiv) storage charges for vehicles over 10,000 pounds, (xv)  and other rates, only as permitted by applicable law, rules and regulations.

211.   Upon information and belief, from April 1, 2017 to the present date, Defendant Runway routinely charges rates in excess of those as permitted by applicable law, rules and regulations for (i) hoisting and towing rates, (ii) milage rates,  (iii) storage rates for first three days, (iv) storage rates for each day after three days, (v) gasoline deliver charges, (vi) removing flat tire and replacing spare tire charges, (vii) battery boost charges, (viii) heavy duty towing rates for preparation, hoisting and towing for 1st mile or fraction thereof, (ix) prescribed rates for vehicles between 4,500 pounds and 10,000 pounds, (x) prescribed

rates for vehicles between 10,000 pounds and 18,000 pounds, (xi) use of underlifts, (xii) storage charges for vehicles over 10,000 pounds, (xiii) prescribed rates for vehicles over 25,000 pounds and (xiv) storage charges for vehicles over 10,000 pounds.

212.   Upon information and belief, from April 1, 2017 to the present date, the NYPD knew and knows that and permits Defendant Runway to routinely charges rates in excess of those as permitted by applicable law, rules and regulations for (i) hoisting and towing rates, (ii) milage rates,  (iii) storage rates for first three days, (iv) storage rates for each day after three days, (v) gasoline deliver charges, (vi) removing flat tire and replacing spare tire charges, (vii) battery boost charges, (viii) heavy duty towing rates for preparation, hoisting and towing for 1st mile or fraction thereof, (ix) prescribed rates for vehicles between 4,500 pounds and 10,000 pounds, (x) prescribed rates for vehicles between 10,000 pounds and 18,000 pounds, (xi) use of underlifts, (xii) storage charges for vehicles over 10,000 pounds, (xiii) prescribed rates for vehicles over 25,000 pounds and (xiv) storage charges for vehicles over 10,000 pounds.

213.   Upon information and belief, from April 1, 2017 to the present date, the NYC Consumer Affairs knew and knows that and permits Defendant Runway to routinely charges rates in excess of those as permitted by applicable law, rules and regulations for (i) hoisting and towing rates, (ii) milage rates,  (iii) storage rates for first three days, (iv) storage rates for each day after three days, (v) gasoline deliver charges, (vi) removing flat tire and replacing spare tire charges, (vii) battery boost charges, (viii) heavy duty towing rates for preparation, hoisting and towing for 1st mile or fraction thereof, (ix) prescribed rates for vehicles between 4,500 pounds and 10,000 pounds, (x) prescribed rates for vehicles between 10,000 pounds and 18,000 pounds, (xi) use of underlifts, (xii) storage

charges for vehicles over 10,000 pounds, (xiii) prescribed rates for vehicles over 25,000 pounds and (xiv) storage charges for vehicles over 10,000 pounds.

214.    Upon information and belief, from April 1, 2017 to the present date, Defendant Runway charges consumers, business owners, insurance companies, finance companies and leasing companies rate that are excess of the rates for towing services, storage services and other services as permitted by law.

215.    Upon information and belief, from April 1, 2017 to the present date, the NYPD knew and knows that Defendant Runway charges consumers, business owners, insurance companies, finance companies and leasing companies rate that are excess of the rates for towing services, storage services and other services as permitted by law.

216.    Upon information and belief, from April 1, 2017 to the present date, the NYC Consumer Affairs knew and knows that Defendant Runway charges consumers, business owners, insurance companies, finance companies and leasing companies rate that are excess of the rates for towing services, storage services and other services as permitted by law.

217.    Upon information and belief, Defendant Runway routinely fails to deliver Authorization to Tow Slips to the NYPD precinct of record within two (2) hours of removal of a vehicle from an Arterial Highway.

218.    Upon information and belief, Defendant Runway routinely fails to deliver Authorization to Tow Slips to the NYPD precinct of record within two (2) hours of removal of a vehicle from an Arterial Highway, which resulted and results in excessive storage charges for storage of vehicles charged by Defendant Runway to consumers, business owners, insurance companies, finance companies and leasing companies who pay storage

fees for storage of vehicles which they were never notified were towed and in the posession of Defendant Runway.

219.    Upon information and belief, the NYPD knows that Defendant Runway routinely fails to deliver Authorization to Tow Slips to the NYPD precinct of record within two (2) hours of removal of a vehicle from an Arterial Highway, which resulted and results in excessive storage charges for storage of vehicles charged by Defendant Runway to consumers, business owners, insurance companies, finance companies and leasing companies who pay storage fees for storage of vehicles that which they were never notified were towed and in the posession of Defendant Runway.

220.    Upon information and belief, the NYC Consumer Affairs knows that Defendant Runway routinely fails to deliver Authorization to Tow Slips to the NYPD precinct of record within two (2) hours of removal of a vehicle from an Arterial Highway, which resulted and results in excessive storage charges for storage of vehicles charged by Defendant Runway to consumers, business owners, insurance companies, finance companies and leasing companies who pay storage fees for storage of vehicles that they did not know where there vehicle was towed to.

221.    Defendant Runway is required to store vehicles which it tows under the Arterial Towing Program at its Jamaica, New York storage facility.

222.    Defendant Runway stores vehicles which it tows under the Arterial Towing Program at a building at John F. Kennedy Airport, where Defendant Runway has a facility under a contract with the Port Authority of New York and New Jersey, in violation of the rules and regulations of the Arterial Towing Program.

223.    Upon information and belief, Defendant Runway engages in mail fraud and wire fraud by failing to pay workers compensation insurance and payroll taxes on the monies that it pays to its employees, as Defendant Runway pays many of its employees by check and approximately 50% of the pay in cash.

224.    Upon information and belief, Defendant Runway maintains a minimum of two (2) sets of "books" with regard to the Arterial Towing Program, by using certain non-conforming Arterial Towing Programs authorization to tow bills.

225.    Upon information and belief, Defendant Runway does not use the mandated Arterial Towing Program authorization to tow bills when Defendant Runway directs its drivers to charge more than $125.00 for an passenger car arterial tow of less than 10 miles.

226.    Upon information and belief, Defendant Runway also uses the mandated Arterial Towing Program, authorization to tow bills, which states that the rate is $125.00 for an passenger car arterial tow of less than 10 miles, but Defendant Runway directs its drivers to cross out with a pen the sum of $125.00 and write in a higher amount, often $175.00 to $275.00 or more for the tow that the rate authorized by the New York City Administrative Code is only $125.00.

<u>**AS AND FOR A FIRST CLAIM FOR RELIEF**</u>
<u>**FOR BREACH OF CONTRACT**</u>

227.     Plaintiffs repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "226" of this complaint, with the same force and effect as if more fully set forth at length herein.

228.     There was a contract between Plaintiff Wolverine and Defendant Runway for Defendant Runway to provide towing services to Plaintiff Wolverine.

229.     Defendant Runway performed all of its obligations pursuant to its contract with Plaintiff Wolverine.

230.     Defendant Runway breached its contract with Plaintiff Wolverine by failing to provide proper and competent towing services to Plaintiff Wolverine.

231.     Defendant Runway breached its contract with Plaintiff Wolverine by causing damages to Plaintiff's Tractor and personal injuries to Plaintiff Abbey.

232.     Plaintiff Wolverine has been damaged as a result of Defendant Runway failure to perform the terms and conditions of the contract bewteen Plaintiff Wolverine and Defendant Runway

233.     Plaintiff Wolverine has been damaged Defendant Runway's breach of contract.

234.     By reason of the foregoing, Plaintiff Wolverine has been damaged and demands judgment against Defendant Runway in an amount to be determined at trial but anticipated to be no less than $75,000, plus interest, costs, disbursements and attorney's fees.

## AS AND FOR A SECOND CLAIM FOR RELIEF
## FOR VIOLATION OF THE CLAYTON ACT

235.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "234" of this complaint, with the same force and effect as if more fully set forth at length herein.

236.    Defendant Runway maintains possession of monopoly power in the relevant market which is the Seven Runway Towing Highways.

237.    Defendant Runway has willfully acquired the power of a monopoly on the Seven Runway Towing Highways.

238.    Defendant Runway has maintained the power of a monopoly on the Seven Runway Towing Highways.

239.    Defendant Runway did not acquire its power of a monopoly on the Seven Runway Towing Highways by growth or development of its business as consequence of superior services, business acumen or historic accident.

240.    Plaintiffs have been damaged by Defendant Runway's possession of monopoly power on the Seven Runway Towing Highways.

241.    Plaintiffs have been damaged by Defendant Runway's maintenance of its monopoly power on the Seven Runway Towing Highways.

242.    By reason of the foregoing, Plaintiffs have been damaged and demands judgment against Defendants in an amount to be determined at trial but anticipated to be no less than $75,000, plus interest, costs, disbursements and attorney's fees.

## AS AND FOR A THIRD CLAIM FOR RELIEF
## PURSUANT TO NEW YORK GENERAL BUSINESS LAW § 349

243.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "242" of this complaint, with the same force and effect as if more fully set forth at length herein.

244.    Plaintiffs are consumers entitled to the protection afforded under Article 22-A of the General Business Law ("GBL"), entitled "Deceptive Acts and Practices."

245.    GBL § 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are hereby declared unlawful."

246.    A GBL § 349 cause of action accrues when consumer-oriented conduct would be deceptive and materially misleading to a reasonable consumer, and causes damages.

247.    The services provided by Defendant Runway were and are directed to consumers who purchase services from Defendant Runway.

248.    The overcharging by Defendant Runway for towing services on the Seven Runway Towing Highways has a broad impact on consumers at large, who would be or are forced to use Defendant Runway as the exclusive towing operator on the Seven Runway Towing Highways, with millions of vehicles per week traveling on the Seven Runway Towing Highways.

249.     Defendants' acts and omissions are directed at consumers and include, but are not limited to:

      A.      Plaintiffs and similarly situated persons and businesses travel on New York City Arterial Highways;

      B.      Plaintiffs and similarly situated persons and businesses travel on the Seven Runway Towing Highways;

      C.      Defendant Runway has a monopoly on towing services on the Seven Runway Towing Highways;

      D.      Defendant Runway is required to provide a bill of rights to its customers requiring towing services on the Seven Runway Towing Highways;

      E.      The required customer bill of rights, required to be provided by Defendant Runway to its customers states the maximum towing rates allowed to be charged by Defendant Runway for towing services on the Seven Runway Towing Highways;

      F.      Defendant Runway regularly fails to provide the required Authorization to Tow form and customer bill of rights to conceal from the customers and consumers the maximum towing rates permitted for the towing services on the Seven Runway Towing Highways;

      G.      Defendant Runway regularly overcharges motorists requiring towing services on the Seven Runway Towing Highways;

      H.      Defendant Runway regularly charges motorists towing fees, based upon the make and model of the vehicle requiring towing services,

wherein Defendant Runway  would charge more money to tow a Mercedes Benz or BMW then they would charge to tow a Kia or Toyota vehicle;

I.      Plaintiffs and other similarly situated persons rely on the laws, rules and regulations, including New York City Administrative Code §20-509.1 believing that Defendant Runway is charging the only rates that are permitted by law, not questioning the excessive towing rates, because Defendant Runway routinely fails to provide the consumer with Authorization to Tow bills promulgated and required by NYC Consumer Affairs.

250.    The acts and practices herein set forth were deceptive, misleading, and fraudulent.

251.    As a result of such practices, Plaintiffs and the other members of the Class were injured, suffered damages—including both economic and noneconomic damages—and are entitled to relief as provided for by GBL § 349(h).

252.    By reason of the foregoing, Plaintiffs have been damaged and demands judgment against Defendants in an amount to be determined at trial but anticipated to be no less than $75,000, plus interest, costs, disbursements and attorney's fees.

**AS AND FOR A FOURTH CLAIM FOR RELIEF**
**PURSUANT TO RELIEF FOR**
**CIVIL RACKETEER INFLUENCED AND**
**CORRUPT ORGANIZATIONS ACT, 19 U.S.C. §1961, ET. SEQ. ("RICO")**

**VIOLATION OF RICO SECTION 19 U.S.C. §1962(C)**

253.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "252" of this complaint, with the same force and effect as if more fully set forth at length herein.

254.    The RICO statute 18 U.S.C. §1962(c) and (d), provides a civil cause of action to persons in their business or property by reason of the defendant's operation of, or conspiracy to operate, an enterprise through a pattern of racketeering acts.

255.    Plaintiff is a "person" as defined in 18 U.S.C. §1961(3) and 1962(c).

256.    Defendants are each a "person" as defined in 18 U.S.C. §1961(3) and 1962(c).

257.    Upon information and belief, Defendants were employed by and/or associated with an enterprise to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

258.    Upon information and belief, Defendant Runway was and is the enterprise whose activities affect interstate commerce.

259.    Upon information and belief, Defendant Chris Pritsinevelos was and is a member of the enterprise whose activities affect interstate commerce.

260.    Upon information and belief, Defendant Cynthia Pritsinevelos was and is a member of the enterprise whose activities affect interstate commerce.

261.    Upon information and belief, Defendant John Doe # 1 was and is a member of the enterprise whose activities affect interstate commerce.

262.    Upon information and belief, Defendant Runway participated in the operation of the enterprise whose activities affect interstate commerce.

263.    Upon information and belief, Defendant Chris Pritsinevelos participated in the operation of the enterprise whose activities affect interstate commerce.

264.    Upon information and belief, Defendant Cynthia Pritsinevelos participated in the operation of the enterprise whose activities affect interstate commerce.

265.    Upon information and belief, Defendant John Doe # 1 participated in the operation of the enterprise whose activities affect interstate commerce.

266.    Upon information and belief, Defendant Chris Pritsinevelos was and is employed by or associated with the enterprise.

267.    Upon information and belief, Defendant Cynthia Pritsinevelos was and is employed by or associated with the enterprise.

268.    Upon information and belief, Defendant John Doe # 1 was and is employed by or associated with the enterprise.

269.    Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs.

270.    Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of wire fraud, mail fraud and interference with interstate commerce.

271.    The acts of wire fraud, mail fraud and interference with interstate commerce set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

272.    The Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity descried above, in violation of 18 U.S.C. §1962(c).

273.    As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. §1962(c), Plaintiffs have been injured in their business and property as fully stated in this complaint.

274.    Upon information and belief, Defendant Chris Pritsinevelos is a culpable person, who conducts the enterprise which affects interstate commerce, through a pattern of racketeering activity, which has caused injury to Plaintiffs through the violation of the Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq.

275.    Upon information and belief, Defendant Cynthia Pritsinevelos is a culpable person, who conducts the enterprise which affects interstate commerce, through a pattern of racketeering activity, which has caused injury to Plaintiffs through the violation of the Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq.

276.    Upon information and belief, Defendant Runway is a culpable person, who conducts the enterprise which affects interstate commerce, through a pattern of racketeering activity, which has caused injury to Plaintiffs through the violation of the Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq.

277.    Upon information and belief, Defendants have engaged in at least two (2) acts of violations of the Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq. in the past ten years.

278.    The acts of Defendants' violations of the Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq. have been related and continuous and have evidenced a pattern of racketeering.

279.    By Defendant Runway continuing to overcharge consumers and businesses for towing services on the Seven Runway Towing Highways, there is a continuing threat of continuity of the violations of Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq.

280.    Defendants engaged in mail fraud and wire fraud by provision of the towing services using emails, cellular phones, text messages and United States mails on the dates set forth in paragraph 25 (A) though (Y) of this Complaint.

281.    The communications were made by and between Defendant Chris Pritsinevlos, Defendant Cynthia Pritsinevlos, Defendant John Doe # 1, a person identified as "Steve" being an employee of Defendant Runway on the one hand, and tow truck drivers and consumers and business persons on the other hand.

282.    Plaintiff Abbey is a person who sustained injuries to his business and property by reason of Defendants' violation of 18 U.S.C. §1962.

283.    Plaintiff Wolverine is a person who sustained injuries to his business and property by reason of Defendants' violation of 18 U.S.C. §1962.

284.    Class Plaintiffs would be persons who sustained injuries to his, her or their business and property by reason of Defendants' violation of 18 U.S.C. §1962.

285.     Plaintiffs' injuries stem from the predicate acts of wire fraud and mail fraud, which occurred prior to October 29, 2019.

286.     Plaintiffs' injuries stem from the investment of racketeering income, by Defendant Runway deriving income from overcharging consumers and businesses for towing services and using those overcharge receipts for continuing to operate it business and acquire more tow trucks to increase and perpetuate its racketeering enterprise.

287.     All of the allegations made in this Complaint concerning the violations of Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq. occurred within four years prior to the date of the filing of this Complaint.

288.     Defendant John Doe # 1 is a culpable person, who conducts the enterprise which affects interstate commerce, through a pattern of racketeering activity, which has caused injury to Plaintiffs through the violation of the Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq.

289.     Upon information and belief, as set forth below, Defendants engaged in mail fraud in violation of 18 U.S.C. §1341.

290.     Upon information and belief, Defendant Runway established a scheme to defraud consumers and business owners who required towing services on the Seven Runway Towing Highways by overcharging consumers and business owners for towing services.

291.     Upon information and belief, the object of the scheme to defraud consumers and business owners was money.

292.     Upon information and belief,  Defendant Runway used the United States Mails to send invoices, bills and/or receipts to motorists, business owners and

insurance companies to collect the monies that Defendant Runway sought for the overcharges in towing services.

293.    Upon information and belief, as set forth below, Defendants engaged in wire fraud in violation of 18 U.S.C. §1343.

294.    Upon information and belief, Defendant Runway established a scheme to defraud consumers and business owners who required towing services on the Seven Runway Towing Highways by overcharging consumers and business owners for towing services.

295.    Upon information and belief, the object of the scheme to defraud consumers and business owners was money.

296.    Upon information and belief, Defendant Runway sent invoices, bills and/or receipts to motorists, business owners and insurance companies by email, facsimiles, text message to cellular phones, using wires to collect the monies that Defendant Runway sought for the overcharges in towing services.

297.    Upon information and belief, Defendant Runway transmitted invoices and authorization to tow forms via the United States Mail and via email and through cellular phone service.

298.    Upon information and belief, Defendant Runway engaged in using the Seven Runway Towing Highways to overcharge consumers and businesses by charging rates for towing services, in excess of the rates permitted pursuant to 20 §509.1 for towing under the Arterial Towing Program.

299.    Upon information and belief, as set forth below, Defendants interfered with commerce in violation of 18 U.S.C. §1951.

300.    Upon information and belief, Defendant Runway would tow vehicles, including the Tractor and Trailer which was driven by Plaintiff Abbey, and Defendant Runway interfered with interstate commerce, as Plaintiff Abbey and Plaintiff Wolverine were delivering produce in interstate commerce, which delivering was interfered with by Defendant Runway who towed the Tractor and held it hostage until Plaintiff Abbey, Plaintiff Wolverine and Progressive Insurance Company paid an extortion totaling approximately $31,000 to have Defendant Runway release the Tractor to Plaintiff Wolverine.

301.    Upon information and belief, between April 1, 2017 and the present date, Defendant Runway engaged in a regular practice of interfering with interstate commerce, by using highways funded with funds of the United States governments, by towing vehicles that were perfectly safe to drive and holding such vehicle hostage until an affected motorist paid an extortion payment consisting of excessive overcharges for towing services, overcharges for storage fees and charges for fees that were not and are not permitted under the law, for the motorist gain possession of their vehicle from possession of Defendant Runway

302.    Upon information and belief, between April 1, 2017 and the present date, Defendant Runway obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, by extortion.

303.    Defendant Chris made decisions to cause Defendant Runway to overcharge Plaintiff for towing charges and to overcharge consumers, businesses, insurance companies and automobile motor clubs for towing services, charging rates in excess of the rates permitted by law.

304.     Defendant Cynthia made decisions to cause Defendant Runway to overcharge Plaintiff for towing charges and to overcharge consumers, businesses, insurance companies and automobile motor clubs for towing services, charging rates in excess of the rates permitted by law.

305.     Defendant John Doe # 1 made decisions to cause Defendant Runway to overcharge Plaintiff for towing charges and to overcharge consumers, businesses, insurance companies and automobile motor clubs for towing services, charging rates in excess of the rates permitted by law.

306.     Defendant Runway made decisions to overcharge Plaintiff for towing charges and to overcharge consumers, businesses, insurance companies and automobile motor clubs for towing services, charging rates in excess of the rates permitted by law.

307.     The numerous overcharging of consumers, businesses, insurance companies and automobile motor clubs for towing services between on or about April 1, 2017 to the present date, are predicate acts under 18 U.S.C. §1961, et. seq.

308.     Defendant Chris is an associate of the enterprise.

309.     Defendant Cynthia is an associate of the enterprise.

310.     Defendant John Doe # 1 is an associate of the enterprise.

311.     Defendants conduct evidences a pattern of entering disregarding laws, including but not limited to New York City Administrative Code 20 §509.1 by overcharging consumers, businesses, insurance companies and automobile motor clubs for towing services, charging rates in excess of the rates permitted by law.

312.     At all times relevant to this complaint, Defendant Runway constituted an enterprise within the meaning of 18 U.S.C. §1961(4) in that it was a corporation with, upon information and belief, more than thirty employees and/or associates.

313.     The purpose of the enterprise was to generate money through the towing of vehicles on New York City's Arterial Highways, under the New York City Arterial Towing Program.

314.     The purpose of the enterprise was implemented by the enterprise associates through various legal activities.

315.     The legal activities consisted of charging for the towing of vehicles.

316.     The Defendants used the enterprise to prey upon victims whose vehicles became disabled on the Seven Runway Towing Highways.

317.     The Defendants used the enterprise to prey upon victims whose vehicles became disabled on the Seven Runway Towing Highways by overcharing the individuals and businesses that required towing services on the Seven Runway Towing Highways.

318.     Each of the associates of the enterprise had relationships with the other associates of the enterprise.

319.     Defendant Chris had a relationship with Defendant Cynthia.

320.     Defendant Cynthia had a relationship with Defendant Chris.

321.     Defendant Chris had a relationship with Defendant John Doe # 1.

322.     Defendant Cynthia had a relationship with Defendant John Doe # 1.

323.     Defendant John Doe # 1 had a relationship with Defendant Chris.

324.     Defendant John Doe # 1 had a relationship with Defendant Cynthia.

325.     Defendant Chris had a relationship with Defendant Runway

326. Defendant Cynthia had a relationship with Defendant Runway

327. Defendant John Doe # 1 had a relationship with Defendant Runway

328. The enterprise and its activities continued from at least April 1, 2017 to the present date.

329. At all times relevant to this complaint, Defendant Runway has been an "enterprise" within the meaning of 18 U.S.C. §1961(4).

330. The enterprise operated in the Eastern District of New York.

331. Defendant Runway towed vehicles that traveled in interstate commerce.

332. Defendant Runway towed vehicles whose components were made and delivered in in interstate commerce.

333. Defendant Runway towed vehicles which had an effect on interstate commerce.

334. Defendant Runway constituted an ongoing organization whose members and associates, including Defendant Chris, Defendant Cynthia and Defendant John Doe # 1 functioned as a continuing unit for many years, with the common purpose of receiving income from the overcharing of consumers, businesses, insurance companies and automobile motor clubs for towing services at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes.

335. The principal purpose of the enterprise was for each person associated with the enterprise to profit from the overcharing by Defendant Runway of consumers, businesses, insurance companies and automobile motor clubs for towing services at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes.

336.    The enterprise's associates implemented the unlawful purpose through various legal activities, but principally through the overcharing by Defendant Runway of consumers, businesses, insurance companies and automobile motor clubs for towing services at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes.

337.    Upon information and belief, the enterprise associates implemented the unlawful purposes through various illegal activities, but principally through the overcharing by Defendant Runway of consumers, businesses, insurance companies and automobile motor clubs for towing services at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes.

338.    At all times relevant to this complaint, the affairs of the enterprise have been conducted through a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(B).

339.    Defendants conspired to comit acts, to wit: overcharge consumers, businesses, insurance companies and automobile motor clubs for towing services at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes.

340.    Defendants all agreed to join in, and knowingly participated in, a conspiracy to the overcharge consumers, businesses, insurance companies and automobile motor clubs for towing services at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes.

341.    Defendants acted in furtherance of the conspiracy by using Defendant Runway's monopoly in providing towing services on the Seven Runway Towing Highways.

342.    Defendants acted in furtherance of the conspiracy by excluding any other towing companies from entering on the Seven Runway Towing Highways and providing

exclusive towing services to consumers, businesses, insurance companies and automobile motor clubs at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes.

343.    Defendant Chris acted in furtherance of the conspiracy by acting as an officer of and/or shareholder of Defendant Runway and by managing the day to day affairs of Defendant Runway and deciding the prices to charge to consumers, businesses, insurance companies and automobile motor clubs requiring towing services on the Seven Runway Towing Highways at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes.

344.    Defendant Cynthia acted in furtherance of the conspiracy by acting as an officer of and/or shareholder of Defendant Runway and by managing the day to day affairs of Defendant Runway and deciding the prices to charge to consumers, businesses, insurance companies and automobile motor clubs requiring towing services on the Seven Runway Towing Highways at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes.

345.    Defendant John Doe # 1 acted in furtherance of the conspiracy by acting as an a manager of Defendant Runway and by managing the day to day affairs of Defendant Runway and deciding the prices to charge to consumers, businesses, insurance companies and automobile motor clubs requiring towing services on the Seven Runway Towing Highways at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes.

346.    Upon information and belief, Defendants decided the rate to charge consumers and businesses based on the make and model of the vehicle being towed.

347.    Upon information and belief, a tow truck driver employed by Defendant Runway would contact the dispatcher at Defendant Runway when the tow truck driver came upon a disabled driver on the Seven Runway Towing Highways and the tow truck driver would tell the dispatcher the make and model of the vehicle, and then, based on the  make and model of the vehicle, Defendant Chris, Defendant Cynthia and/or Defendant John Doe # 1 would then tell the tow truck driver the amount of money to charge the customer for the towing of the vehicle, disregarding maximum the flat $125.00 tow rate pursuant to New York City Administrative Code §20-509.1 for 10 miles of towing services.

348.    Plaintiffs have suffered injury to its person and property within the meaning of 18 U.S.C. §1964(c) by reason of Defendants' violations of 18 U.S.C. §1962(c), in an amount to be determined at trial, but no less than the minimum jurisdictional limit of $75,000 of this court.

349.    By reason of the foregoing, Plaintiffs have been damaged and demands judgment against Defendants in an amount to be determined at trial but anticipated to be no less than the minimum jurisdictional limit of $75,000 of this court, plus actual damages, treble damages, interest, costs, disbursements and attorney's fees.

## AS AND FOR A FIFTH CLAIM FOR RELIEF PURSUANT TO RELIEF FOR CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 19 U.S.C. §1961, ET. SEQ. ("RICO")

## VIOLATION OF RICO SECTION 19 U.S.C. §1962(a)

350.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraph "1" through "349" of this Complaint, with the same force and effect as if more fully set forth at length herein.

351.    Defendant Runway is an enterprise engaged in and whose activities affect interstate commerce.

352.    Defendant Runway used and invested income, through mail fraud, wire fraud and by interfering with interstate commerce that was derived from a pattern of racketeering activity in interstate commerce.

353.    Defendant Runway used income derived from the a pattern of racketeering activity in interstate commerce to acquire additonal tow trucks to further the enterprise and the racketeering activity.

354.    The mail fraud, wire fraud and by interfering with interstate commerce constitutes a pattern of racketeering activity pursuant to 18 U.S.C. 1961(5).

355.    As a direct and proximate result of Defendant Runway's racketeering activities and violations of 18 U.S.C. 1962(a), Plaintiffs have been injured in their business and property.

356.    By reason of the foregoing, Plaintiffs have been damaged and demands judgment against Defendants in an amount to be determined at trial but anticipated to be no less than the minimum jurisdictional limit of $75,000 of this court, plus actual damages, treble damages, interest, costs, disbursements and attorney's fees.

**AS AND FOR A SIXTH CLAIM FOR RELIEF**
**PURSUANT TO RELIEF FOR**
**CIVIL RACKETEER INFLUENCED AND**
**CORRUPT ORGANIZATIONS ACT, 19 U.S.C. §1961, ET. SEQ. ("RICO")**

**VIOLATION OF RICO SECTION 19 U.S.C. §1962(b)**

357.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraph "1" through "356" of this Complaint, with the same force and effect as if more fully set forth at length herein.

358.    Defendant Runway, Defendant Chris Pritsinevelos, Defendant Cynthia Pritsinevelos and Defendant John Doe # 1 is an enterprise engaged in and whose activities affect interstate commerce.

359.    Defendants acquired and maintained interests in and control of the enterprise through a pattern of racketeering activity.

360.    The wire fraud, mail fraud and interference with interstate commerce constitutes a pattern of racketeering activity pursuant to 18 U.S.C. 1961(5).

361.    Defendants have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. 1962(b).

362.    As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. 1962(b), Plaintiffs have been injured in their business and property.

363.    By reason of the foregoing, Plaintiffs have been damaged and demands judgment against Defendants in an amount to be determined at trial but anticipated to be no less than the minimum jurisdictional limit of $75,000 of this court, plus actual damages, treble damages, interest, costs, disbursements and attorney's fees.

**AS AND FOR A SEVENTH CLAIM FOR RELIEF**

**PURSUANT TO RELIEF FOR**
**CIVIL RACKETEER INFLUENCED AND**
**CORRUPT ORGANIZATIONS ACT, 19 U.S.C. §1961, ET. SEQ. ("RICO")**

**VIOLATION OF RICO SECTION 19 U.S.C. §1962(d)**

364.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraph "1" through "363" of this Complaint, with the same force and effect as if more fully set forth at length herein.

365.     Defendants Runway Towing Corp., Defendant Chris Pritsinevelos, Defendant Cynthia Pritsinevelos and Defendant John Doe # 1 agreed and conspired to violate 18 USC §§ 1962(a)(b) and (c).

366.     Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. Defendants knew that their predicate acts were part of a pattern of racketeering activity and agree to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. 1962(a)(b) and (c), in violation of 18 U.S.C. 1962(d).

367.     As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. 1962(d), Plaintiffs have been injured in their business and property.

368.     By reason of the foregoing, Plaintiffs have been damaged and demands judgment against Defendants in an amount to be determined at trial but anticipated to be no

less than the minimum jurisdictional limit of $75,000 of this court, plus actual damages, treble damages, interest, costs, disbursements and attorney's fees.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF BY PLAINTIFF TIMOTHY ABBEY AGAINST DEFENDANT RUNWAY FOR PERSONAL INJURIES

369.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "368" of this complaint, with the same force and effect as if more fully set forth at length herein.

370.    Upon information and belief, Defendant Runway was the owner of a tow truck (the "Tow Truck") which was towing the Tractor and Trailer on or about October 29, 2019.

371.    Defendant Runway owed a duty to Plaintiff Abbey to protect Plaintiff Abbey from being injured while being a passenger in the Tractor owned by Plaintiff Wolverine while being towed by Defendant Runway on October 29, 2019.

372.    Defendant Runway breached its duty to provide safe and competent towing services to Plaintiff Wolverine and Plaintiff Abbey, which included the duty to protect Plaintiff Abbey from being injured while being a passenger in the Tractor owned by Plaintiff Wolverine while being towed by Defendant Runway on  October 29, 2019.

373.    Defendant Runway's breach was the proximate cause of injuries to Plaintiff Abbey.

374.    Plaintiff Abbey suffered damages as a result of the breach by Defendant Runway

375.     Upon information and belief, on October 29, 2019, Defendant John Doe # 2, was driving a tow truck owned by Defendant Runway when Plaintiff Abbey suffered personal injuries.

376.     Upon information and belief, that at all the times hereinafter mentioned, Defendant John Doe # 2, operated and controlled the Tow Truck with the knowledge of Defendant Runway

377.     Upon information and belief, that at all the times hereinafter mentioned, Defendant John Doe # 2, operated and controlled the Tow Truck with the express permission of Defendant Runway

378.     Upon information and belief, that at all the times hereinafter mentioned, Defendant John Doe # 2, operated and controlled the Tow Truck with the consent of Defendant Runway

379.     Upon information and belief, that at all the times hereinafter mentioned, Defendant John Doe # 2, operated and controlled the Tow Truck with the express direction of Defendant Runway

380.     Upon information and belief, that at all the times hereinafter mentioned, Defendant John Doe # 2, including on October 29, 2019, the Tow Truck was being operated by Defendant John Doe # 2 in the course of his employment with Defendant Runway

381.     Upon information and belief, at all times herein mentioned, the Tow Truck was registered to Defendant Runway

382.     Upon information and belief, on October 29, 2019, Defendant John Doe # 2 operated the Tow Truck.

383.    Upon information and belief, on October 29, 2019, Defendant John Doe # 2 was responsible for the operation of the Tow Truck.

384.    Upon information and belief, on October 29, 2019, Defendant John Doe # 2 operated, used, and controlled the Tow Truck with the knowledge, permission, and consent of Defendant Runway

385.    Upon information and belief, on October 29, 2019, Defendant John Doe # 2 was operating and using the Tow Truck with the consent of Defendant Runway

386.    Upon information and belief, on October 29, 2019, Defendant John Doe # 2 failed to properly connect the Tractor to the Trailer which resulted in the Trailer disconnecting from the Tractor, hitting the Tractor (the "Collision") and causing injuries to Plaintiff Abbey.

387.    That by reason thereof, Plaintiff Abbey sustained serious, painful, permanent, and disabling personal injuries requiring him to seek and obtain medical care and treatment and disabling him from his normal and usual daily activities.

388.    That by reason thereof, Plaintiff Abbey sustained serious, painful, permanent, and personal injuries disabling him from his normal and usual daily activities.

389.    That by reason thereof, Plaintiff Abbey sustained serious, painful, permanent, and disabling personal injuries rendering him unable to perform his normal work.

390.    That by reason thereof, Plaintiff Abbey sustained serious, painful, permanent, and disabling personal injuries causing him to suffer loss of earnings.

391.    As a result thereof, Plaintiff Abbey was caused to sustain "serious personal injuries" as defined in Section 5102(d) of the Insurance Law of the State of New York.

392.    That as a result thereof, Plaintiff Abbey sustained serious injuries and economic losses greater than basic economic loss as defined in Section 5102(a) of the Insurance Law of the State of New York.

393.    Plaintiff Abbey is a covered person as defined by the Insurance Law of the State of New York.

394.    As a direct and proximate result of said Collision, Plaintiff Abbey suffered serious painful and permanent bodily injuries to his back and neck which required medical treatment including physical therapy, and will require physical rehabilitation.

395.    As a direct and proximate result of the physical injuries suffered by Plaintiff Abbey in the Collision, Plaintiff Abbey has been incapacitated from pursuing his usual employment and other activities, may be left with disabilities that will in the future similarly incapacitate him and cause him pain and suffering, and may require medical treatment.

396.    There was no negligence on the part of Plaintiff Abbey contributing thereto.

397.    That Plaintiff Abbey's injuries were caused jointly and severally through the negligence of the Defendant Runway and Defendant John Doe # 2, without any fault on Plaintiff Abbey's part contributing thereto.

398.    This action falls within one or more of the exceptions of CPLR §1602.

399.    By reason of the foregoing, Plaintiff Timothy Abbey has been damaged and demands judgment against Defendants in an amount to be determined at trial but anticipated to be no less than the minimum jurisdictional limit of $75,000 of this court, plus interest, costs, disbursements and attorney's fees.

## AS AND FOR A NINTH CLAIM FOR RELIEF
## BY PLAINTIFF TIMOTHY ABBEY
## AGAINST DEFENDANT JOHN DOE # 2
## FOR PERSONAL INJURIES

400.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraph "1" through "399" of this Complaint, with the same force and effect as if more fully set forth at length herein.

401.    Defendant John Doe # 2 was careless and negligent in his operation and control of the Tow Truck, which caused Plaintiff Abbey to suffer serious and permanent personal injuries.

402.    That the aforesaid occurrence was due to Defendant John Doe # 2's negligence.

403.    A reasonably prudent driver would not direct a person to remain inside a vehicle that was being towed by a tow truck.

404.    A reasonably prudent driver would not allow a person to remain inside a vehicle that was being towed by a tow truck.

405.    A reasonably prudent driver of a tow truck, would be so vigilant as to protect the customer whose vehicle was being towed by such tow truck driver.

406.    Defendant John Doe # 2 breached his duty to Plaintiff Abbey by driving the Tow Truck with Plaintiff Abbey located inside of the Tractor, which proximately caused serious and permanent personal injuries to Plaintiff Abbey.

407.    Defendant John Doe # 2 could foresee that his careless, negligent, and/or reckless driving of the Tow Truck without first ensuring the safety of Plaintiff Abbey, would result in Plaintiff Abbey suffering serious bodily injuries.

408.    As a result of Defendant John Doe # 2's breach of his duty, Plaintiff Abbey suffered serious and permanent bodily injuries.

409.    The negligence of the Defendant John Doe # 2 consisted of operating the Tow Truck in a dangerous manner; failing to keep a proper lookout ahead and behind; failing to obey and heed the roadway, traffic and pedestrian conditions then and there existing; failing to give warning or signal of approach; violating the "Rules of the Road" and the Vehicle and Traffic Regulations of the State of New York; violating the New York City Administrative Code; placing Plaintiff Abbey in imminent hazard; failing to comprehend, apprehend and/or anticipate a hazardous and dangerous situation; failing to take reasonable steps to avoid the Collision; and the Defendant John Doe # 2 was reckless, careless and negligent in the operation of the Tow Truck.

410.    That by reason of the wrongful, negligent and unlawful actions of Defendant John Doe # 2, as aforesaid, Plaintiff Abbey was seriously injured, bruised and wounded, suffered, still suffers, and will continue to suffer for some time great physical pain, great bodily injuries, shock, mental anguish, and became sick, sore, lame and disabled and so remained for a considerable length of time.

411.    That because of the aforesaid wrongful, negligent, and unlawful actions of Defendant John Doe # 2, Plaintiff Abbey was caused and will continue to be caused to incur expenses for medical care and attention; and Plaintiff Abbey was and will continue to be rendered unable to perform Plaintiff Abbey's normal activities and duties and have sustained a resultant loss therefrom.

412.     By reason of the foregoing, Plaintiff Abbey has been damaged by Defendant John Doe # 2 in a sum of money having a present value that exceeds the jurisdictional minimum of $75,000 of this court.

413.     By reason of the foregoing, Plaintiff Abbey demands judgment against Defendant John Doe # 2 in the sum of money having a present value that exceeds the jurisdictional minimum limit of this Court, to wit: $75,000, for this diversity action.

414.     By reason of the foregoing, Plaintiff Timothy Abbey has been damaged by Defendant John Doe # 2 in an amount to be determined at trial but anticipated to be no less than $75,000, plus interest, costs, disbursements and attorney's fees.

**AS AND FOR A TENTH CLAIM FOR RELIEF
BY PLAINTIFF WOLVERNINE XPRESS LLC
AGAINST DEFENDANT RUNWAY
FOR DAMAGE TO PROPERTY**

415.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "414" of this complaint, with the same force and effect as if more fully set forth at length herein.

416.     Defendant Runway was careless and negligent in his operation and control of the Tow Truck, which caused Plaintiff Wolverine to suffer property damages to the Tractor and Trailer.

417.     Defendant John Doe # 2 was careless and negligent in his operation and control of the Tow Truck, which caused Plaintiff Wolverine to suffer property damages to the Tractor and Trailer.

418.     That the aforesaid occurrence was due to Defendant Runway's negligence.

419.     That the aforesaid occurrence was due to Defendant John Doe # 2's negligence.

420.     Defendant Runway was responsible for the actions of Defendant John Doe # 2.

421.     A reasonably prudent tow truck driver would have ensured that the Tractor being towed connected to the Trailer would have been properly connected.

422.     A reasonably prudent driver of a tow truck, would be so vigilant as to protect the customer's property and vehicles, to wit: the Tractor and Trailer.

423.     A reasonably prudent towing company, would be so vigilant as to protect the customer's property and vehicles, to wit: the Tractor and Trailer.

424.     Defendant Runway breached their duty to Plaintiff Wolverine by driving the Tow Truck without insuring that the Tractor was connected to the Trailer.

425.     Defendant John Doe # 2 breached his duty to Plaintiff Wolverine by driving the Tow Truck without insuring that the Tractor was connected to the Trailer.

426.     Defendant Runway could foresee that his careless, negligent, and/or reckless driving of the Tow Truck without first ensuring the safety of the Tractor and Trailer, would result in property damage to the Tractor and Trailer.

427.     Defendant John Doe # 2 could foresee that his careless, negligent, and/or reckless driving of the Tow Truck without first ensuring the safety of the Tractor and Trailer, would result in property damage to the Tractor and Trailer.

428.     As a result of Defendant Runway's breach of his duty, Plaintiff Wolverine suffered property damages to the Tractor and Trailer.

429.     As a result of Defendant John Doe # 2's breach of his duty, Plaintiff Wolverine suffered property damages to the Tractor and Trailer.

430.     That by reason of the wrongful, negligent and unlawful actions of Defendant Runway, as aforesaid, Plaintiff Wolverine suffered personal injuries to the Tractor and Trailer.

431.     That by reason of the wrongful, negligent and unlawful actions of Defendant John Doe # 2, as aforesaid, Plaintiff Wolverine suffered personal injuries to the Tractor and Trailer.

432.     By reason of the foregoing, Plaintiff Wolverine Xpress LLC has been damaged by Defendant Runway and Defendant John Doe # 2, in an amount to be determined at trial, plus interest, costs, disbursements and attorney's fees.

## AS AND FOR A ELEVENTH CLAIM FOR RELIEF FOR NEGLIGENT SUPERVISION BY PLAINTIFF TIMOTHY ABBEY AND PLAINTIFF WOLVERNINE XPRESS LLC AGAINST DEFENDANT RUNWAY

433.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "432" of this complaint, with the same force and effect as if more fully set forth at length herein.

434.     Defendant John Doe # 2 failed to protect Plaintiff Abbey from suffering personal injury.

435.     Defendant John Doe # 2 required Plaintiff Abbey to sit in the Tractor when Defendant John Doe # 2 was towing the Tractor and Trailer.

436.     Defendant John Doe # 2 refused to allow Plaintiff Abbey to sit in the Tow Truck while the Tractor and Trailer were being towed.

437.    Defendant John Doe # 2 maliciously caused harm to Plaintiff Abbey by Defendant John Doe # 2 refusing to allow Plaintiff Abbey to sit in the Tow Truck while the Tractor and Trailer were being towed, which Defendant John Doe # 2 knew could cause injury to Plaintiff Abbey.

438.    Defendant Runway and Defendant John Doe # 2 were in employer-employee relationship.

439.    Defendant John Doe # 2 was not competent in operations of towing.

440.    Defendant John Doe # 2 was not competent in operations of towing tractors and trailers.

441.    Defendant Runway knew of the Defendant John Doe # 2 propensity to commit the tortious act or should have known of such propensity had the defendant conducted an adequate hiring procedure.

442.    Defendant Runway hired, supervised and/or retained Defendant John Doe # 2, despite his propensity to commit the tortious act.

443.    Plaintiff Abbey suffered damages proximately caused by the Defendant Runway's negligent hiring or supervision.

444.    The tort was committed on using Defendant Runway instrumentalities.

445.    By reason of the foregoing, Plaintiff Timothy Abbey and Plaintiff Wolverine Xpress LLC have been damaged by Defendant Runway in an amount to be determined at trial but anticipated to be no less than $75,000, plus interest, costs, disbursements and attorney's fees.

## <u>AS AND FOR A TWELFTH CLAIM FOR RELIEF</u>
## <u>FOR PUNITIVE DAMAGES</u>

446.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "445" of this complaint, with the same force and effect as if more fully set forth at length herein.

447.    Defendants intentionally engaged in overcharing by Defendant Runway of consumers, businesses, insurance companies and automobile motor clubs for towing services at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes.

448.    Defendants intentionally engaged in overcharing by Defendant Runway of consumers, businesses, insurance companies and automobile motor clubs for towing services at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes evidences a fraudulent motive of the Defendants.

449.    Defendants intentionally engaged in overcharing by Defendant Runway of consumers, businesses, insurance companies and automobile motor clubs for towing services at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes is in such conscious disregard of the rights of Plaintiffs.

450.    Defendants conduct is willful in its attempt to improperly attempt to cancel and/or terminate the Contract of Sale in order for Defendant to obtain a greater price than the Purchase Price.

451.    Defendants conduct is with wonton disregard of Plaintiffs rights and is an improper attempt to use its monopoly on the Seven Runway Towing Highways to steal money from consumers, businesses, insurance companies and automobile motor clubs for towing services at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes.

452.    Defendants conduct was and is willful, wanton and reckless misconduct.

453.    Defendants conduct was and consists of intentional wrongdoing.

454.    Defendants conduct was and is deliberate wrongdoing.

455.    Defendants conduct by using its monopoly on the Seven Runway Towing Highways by a pattern of overcharing consumers, businesses, insurance companies and automobile motor clubs for towing services provided by Defendant Runway Towing Corp at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes was and is outrageous conduct.

456.    Defendants conduct by evidencing a pattern of overcharing consumers, businesses, insurance companies and automobile motor clubs for towing services provided by Defendant Runway Towing Corp at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes was and consisted of aggravating circumstances.

457.    Punitive damages are appropriate against Defendants as Defendants conduct herein evinces a high degree of moral turpitude and demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations.

458.    Defendants should be detered from overcharing consumers, businesses, insurance companies and automobile motor clubs for towing services provided by Defendant Runway Towing Corp at rates in excess of the rates permitted by all applicable laws, rules, regulations and statutes.

459.    Defendants' actions were gross, wanton, and willful and involved a high degree of immoral conduct and therefore, punitive damages should be awarded against it in the amount of $5,000,000.00.

460.    By reason of the foregoing, Plaintiffs have been damaged by Defendant Runway, Defendant Chris, Defendant Cynthia and Defendant John Doe # 1 in an amount to be determined at trial but anticipated to be no less than $5,000,000, plus interest, costs, disbursements and attorney's fees.

**WHEREFORE,** Plaintiffs demand judgment as follows:

1.    Declaring this Action to be a proper plaintiffs' class action, declaring Plaintiffs to be proper representatives of the Class, and declaring Plaintiffs' counsel to be class counsel;

2.    On the First Claim for Relief for Breach of Contract against Defendant Runway in an amount to be determined at trial but anticipated to be no less than $75,000, plus interest, costs, disbursements and attorney's fees;

3.    On the Second Claim for Relief for violations of the Clayton Act, 15 U.S.C. §15 against Defendants in an amount to be determined at trial but anticipated to be no less than $75,000, plus interest, costs, disbursements and attorney's fees;

4.    On the Third Claim for Relief for violations of New York General Business Law §349, et.seq.  under New York's Unfair and Deceptive Trade Practices Act, awarding such preliminary injunctive and ancillary relief as might be necessary to avert the likelihood of consumer injury during the pendency of this action; and entering a permanent injunction to prevent future violations of New York General Business Law §349, et.seq. against Defendants and for damages in an amount to be determined at trial but anticipated to be no less than $75,000, plus interest, costs, disbursements and attorney's fees;

5.    On the Third Claim for Relief for violations of New York General Business Law §349, et.seq.  under New York's Unfair and Deceptive Trade Practices Act,

awarding statutory and actual damages as provided by New York General Business Law §349(h);

6. On the Fourth Claim for Relief for violations of Civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et. seq. ("RICO") against Defendants in an amount to be determined at trial but anticipated to be no less than $75,000, plus actual damages, treble damages, interest, costs, disbursements and attorney's fees;

7. On the Fifth Claim for Relief for violations of Civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et. seq. ("RICO") against Defendants in an amount to be determined at trial but anticipated to be no less than $75,000, plus actual damages, treble damages, interest, costs, disbursements and attorney's fees;

8. On the Sixth Claim for Relief for violations of Civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et. seq. ("RICO") against Defendants in an amount to be determined at trial but anticipated to be no less than $75,000, plus actual damages, treble damages, interest, costs, disbursements and attorney's fees;

9. On the Seventh Claim for Relief for violations of Civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et. seq. ("RICO") against Defendants in an amount to be determined at trial but anticipated to be no less than $75,000, plus actual damages, treble damages, interest, costs, disbursements and attorney's fees;

10. On the Eighth Claim for Relief for personal injuries sustained by Plaintiff Timothy Abbey against Defendant Runway in an amount to be determined at trial but anticipated to be no less than $75,000, plus interest, costs, disbursements and attorney's fees;

11. On the Ninth Claim for Relief for personal injuries sustained by Plaintiff Timothy Abbey against Defendant John Doe # 2 in an amount to be determined at trial but anticipated to be no less than $75,000, plus interest, costs, disbursements and attorney's fees;

12. On the Tenth Claim for Relief for damage to property sustained by Plaintiff Wolverine Xpress LLC against Defendants in an amount to be determined at trial but anticipated to be no less than $75,000, plus interest, costs, disbursements and attorney's fees;

13. On the Eleventh Claim for Relief for negligent supervision Plaintiff Wolverine Xpress LLC and Plaintiff Timothy Abbey against Defendant Runway and Defendant John Doe # 2 in an amount to be determined at trial but anticipated to be no less than $75,000, plus interest, costs, disbursements and attorney's fees;

14. On the Twelfth Claim for Relief for punitive damages against Defendants in an amount to be determined at trial but anticipated to be no less than $5,000,000.00, plus interest, costs, disbursements and attorney's fees;

15. granting such other relief as may be proper.

Dated:      December 18, 2019
            Great Neck, New York

_____
Gary Rosen
ROSEN LAW LLC
Attorneys for Plaintiffs
216 Lakeville Road
Great Neck, New York 11020
516-437-3400

# Exhibit "1"
# Instagram Posting



# Exhibit "2"
# The Runway Invoice



124-20 South Conduit Avenue
S. Ozone Park, N.Y. 11430
Phone (718) 656-1272
Fax (718) 995-7304
Jeanettem@runwaytowing.com

**Invoice No. RT46302**

EIN: 20-1378741

## INVOICE

**Customer**

| Owner | Wolverine Xpress Llc   Claim # 192374724 |
|---|---|
| Cs Name | Timothy Abbey |
| Address | |
| City | State     Zip |

| Date | 10/31/2019 |
|---|---|
| Contact# | |
| Service Dates | 10/29/2019 |
| Rep | |

| Tractor Info: | 2016 Peterbilt Tractor & Trailer Vin # 1XPBDP9X4GD349668 |
|---|---|
| Job Type: | Bridge Hit Recovery |
| Towed From: | Bqe @ Meeker Ave & Morgan Ave |
| Time of Job: | 2:00am - 12:00pm; Total amount of hours: 10 Hours |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | **Recovery** | | |
| 8 | 1 Heavy Duty Recovery Specialist on Scene @ $200/Hr for 8/hrs | $200.00 | $1,600.00 |
| 64 | 8 Drivers on Scene to Assist with Recovery @ $200/Hr For 8Hrs | $200.00 | $12,800.00 |
| | **Equipment** | | |
| 8 | One 50-Ton Heavy Duty Wrecker @ $200/Hr For 8Hrs | $200.00 | $1,600.00 |
| 2 | One 40-Ton Heavy Duty Rotator Wrecker @ $1,500/Hr For 2Hrs Minimum | $1,500.00 | $3,000.00 |
| 16 | 2 Flatbeds Trucks to assit with the recovery @ $200 per hr @ 8/Hrs | $200.00 | $3,200.00 |
| 10 | Use of Forklift @ $125/Hr for 10Hrs | $125.00 | $1,250.00 |
| 10 | Specialized equipment 53" Refer Trailer with Tendom Sleeper Tractor | $500.00 | $5,000.00 |
| | @ $500 per hr minimum of 10 hrs | | |
| | **Towing & Transport** | | |
| 1 | Hook Up for Tandem Sleeper Tractor | $300.00 | $300.00 |
| 1 | Use Of Underlift for Tandem Sleeper Tractor | $100.00 | $100.00 |
| 20 | Miles @ $10 Per Mile | $10.00 | $200.00 |
| 1 | Hook Up for 53" Refer Box Trailer | $300.00 | $300.00 |
| 1 | Use Of Underlift for 53" Refer Box Trailer | $100.00 | $100.00 |
| 20 | Miles @ $10 Per Mile | $10.00 | $200.00 |
| | **Storage & Release** | | |
| 2 | Days Of Storage for Tandem Tractor with 53" Box Trailer | $125.00 | $250.00 |
| 1 | Tow Out upon release of Tendom Tractor Sleeper | $250.00 | $250.00 |
| 1 | Tow Out upon release of 53" Refer Trailer | $250.00 | $250.00 |
| 1 | Admin Fee & Pictures | $125.00 | $125.00 |
| 1 | Deliverery of cargo with our T&T per customer request | $2,250.00 | $2,250.00 |
| 1 | Rental of 10 yarder container for all boken parts of broken trailer & dispose | $550.00 | $550.00 |
| | of cargo & do slipt of trailer due to overweight of cargo | Subtotal | $33,325.00 |
| | | Sales Tax | $2,957.59 |
| | | | |
| | | | |
| | | **Total Due To Runway** | **$36,282.59** |

**DOCKET NO. 19cv7116**
 **UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

TIMOTHY ABBEY and
WOLVERINE XPRESS LLC
Individually and on behalf of all others
similarly situated including consumers,
business owners, motorists, owners of vehicles,
insurance companies, automobile finance
companies, automobile leasing companies,

Plaintiffs,

- against -

RUNWAY TOWING CORP.
CYNTHIA PRITSINEVELOS
CHRIS PRITSINEVELOS,
JOHN DOE # 1 and JOHN DOE # 2

Defendants.

## COMPLAINT

SIGNATURE (RULE 130-1.1a)

_____

GARY S. ROSEN, ESQ.

**ROSEN LAW LLC**
**216 Lakeville Road**
**Great Neck, New York 11020**
**(516) 437-3400**